COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| THE STATE OF TEXAS, | | No. 08-11-00380-CR |
| | § | |
| Appellant, | § | Appeal from the |
| | § | |
| v. | | 120th District Court |
| | § | |
| | | of El Paso County, Texas |
| GILBERT SANCHEZ, | § | |
| | | (TC# 20100D02745) |
| Appellee. | § | |

**O P I N I O N**

Gilbert Sanchez was convicted of aggravated sexual assault of Jeanette Ribail. Sanchez

moved for a new trial asserting, among other bases, that the jury charge was erroneous. Agreeing

that the charge was erroneous, the trial court granted the motion for new trial. The State of Texas

now appeals, arguing that the trial court erred by granting the motion for new trial because Sanchez

did not establish that he was egregiously harmed. Because we conclude that Sanchez did not

suffer egregious harm, we reverse the trial court's order.

**FACTUAL AND PROCEDURAL BACKGROUND**

In its charge to the jury, the trial court defined aggravated sexual assault and instructed the

jury on its application as follows:

> A person commits the offense of Aggravated Sexual Assault if the person
> intentionally or knowingly causes the penetration of the sexual organ of another
> person, by any means, without that person's consent, and by the use of physical
> force or violence, and by acts or words places the victim in fear that death would be
> inflicted on any person.

.          .          .

> If you find from the evidence beyond a reasonable doubt that . . .
> SANCHEZ, did . . . intentionally or knowingly cause the penetration of the female
> sexual organ of . . . Ribail . . . without the consent of . . . Ribail by the use of
> physical force or violence, and that … SANCHEZ, did . . . by acts or words place
> . . . Ribail in fear that death would be inflicted on . . . Ribail, then you shall find . . .
> SANCHEZ guilty as charged in Count I of the Indictment . . . .

Although Sanchez objected to other portions of the charge, he did not object to these two paragraphs.

In his motion for new trial, Sanchez asserted that the charge was erroneous because it omitted an element necessary to sustain his conviction for aggravated sexual assault:  that Ribail feared her death was "imminent."  Sanchez further asserted that he was harmed because the charge erroneously permitted the jury to convict him of aggravated sexual assault and assess a punishment commensurate with such an offense without requiring the State to prove that Ribail feared her death was imminent, an element distinguishing aggravated sexual assault from sexual assault.

In granting the motion for new trial, the trial judge did not issue findings of fact and conclusions of law in support of her ruling.[1]  *See* TEX.R.APP.P. 21.8(b).  However, the trial judge made several comments at the hearing on the motion that revealed her reasoning.  Bothered by the omission of the word "imminent" in the charge because "that language . . . is the only way that you can be convicted of an aggravated sexual assault as opposed to just sexual assault," the trial judge concluded that "the charge is incorrect[] [a]nd I think that misdirects the jury."  The trial judge concluded further that this omitted element was "a requirement to find aggravation, and it's important because the aggravation changes the punishment range[,]" and "if that's defective, then you have a different punishment range."  Again, she reiterated "[t]he charge was wrong."

---

[1]  The State requested that the trial court issue findings of fact and conclusions of law.

## STANDARD OF REVIEW

On appeal, the State concedes that the trial court erroneously omitted from the jury charge the aggravating element that Ribail feared her death was imminent, thereby misdirecting the jury about the law. The State argues, however, that the trial court's error did not require it to grant Sanchez a new trial pursuant to Rule of Appellate Procedure 21.3(b), which states that a "defendant must be granted a new trial . . . when the [trial] court has misdirected the jury about the law." TEX.R.APP.P. 21.3(b). Rather, citing to *Igo v. State*, 210 S.W.3d 645 (Tex.Crim.App. 2006), the State contends that the trial court should have determined whether Sanchez was entitled to a new trial by applying the harm analysis established in *Almanza.*[2] We agree.

In *Igo*, the Court of Criminal Appeals held that the *Almanza* harm standard applies to charge errors presented in a motion for new trial. *Igo*, 210 S.W.3d at 646-47. At the trial level, the trial court denied the appellant's motion for new trial asserting charge error. *Id*. at 646. On appeal, the court rejected the appellant's argument that Rule 21.3(b) required the trial court to grant him a new trial and held instead that *Almanza* dictated the proper analysis of his claim. *Id*. The Court of Criminal Appeals agreed, concluding that "though appellant characterized his claim as error in denying a new trial, this case presents error in the charge," and therefore, review "[a]t the appellate level" is governed by the standards established in *Almanza*. *Id.* at 647.

A month after deciding *Igo*, the Court of Criminal Appeals faced the same issue in *State v. McKnight*, 213 S.W.3d 915 (Tex.Crim.App. 2007)(per curiam), albeit in a slightly different context. In *McKnight*, unlike in *Igo*, the trial court granted appellant's motion for new trial asserting charge error. *McKnight*, 213 S.W.3d at 916. In affirming the trial court's ruling, the appeals court employed a traditional abuse-of-discretion standard of review, expressly rejecting

---

[2] *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App. 1985)(op. on reh'g).

the parties' contention that *Almanza* applied.   *State v. McKnight*, 217 S.W.3d 596, 599

(Tex.App.--San Antonio 2006), *pet. granted, judgment vacated by State v. McKnight*, 213 S.W.3d

915 (Tex.Crim.App. 2007)(per curiam).   Relying upon *Igo*, the Court of Criminal Appeals

reversed and remanded.   *McKnight*, 213 S.W.3d at 916.

It is clear that the *Almanza* harm standard, rather than the traditional abuse-of-discretion

standard, applies to appellate review of charge errors presented in a motion for new trial.

Nonetheless, Sanchez contends that the appropriate standard of review in this case is abuse of

discretion.   In support, Sanchez refers us to several cases, including three unpublished cases from

this Court, articulating the general rule that a trial court's decision to grant or deny a new trial is

ordinarily reviewed for abuse of discretion.   *See State v. Herndon*, 215 S.W.3d 901

(Tex.Crim.App. 2007); *Gomez v. State*, 08-06-00318-CR, 2009 WL 4831117 (Tex.App.--El Paso

Dec. 16, 2009, pet. ref'd); *State v. Varkonyi*, No. 08-06-00262-CR, 2008 WL 821580

(Tex.App.--El Paso Mar. 27, 2008), *pet. dism'd, improvidently granted*, No. PD-0587-08, 2009

WL 693499 (Tex.Crim.App. Mar. 18, 2009); *State v. Ordonez*, 156 S.W.3d 850, 851

(Tex.App--El Paso 2005, pet. ref'd).   However, none of these cases addresses charge errors

presented in a motion for new trial.   *See Herndon* (interest of justice); *Gomez*, (evidentiary

hearing); *Varkonyi* (interest of justice); *Ordonez,* (jury misconduct).   Moreover, as established

above, this is the very issue the Court of Criminal Appeals addressed in *Igo* and *McKnight*.   The

*Almanza* harm standard is the appropriate standard for charge errors presented in a motion for new

trial.

## CHARGE ERROR

We review charge error on appeal by determining whether error occurred, and if so,

whether that error caused sufficient harm to require reversal. *Ngo v. State*, 175 S.W.3d 738, 743-44 (Tex.Crim.App. 2005). The degree of harm required for reversal depends on whether the defendant preserved error at trial. *Id.* at 743. When the defendant preserves error at trial by timely objection, the record must establish only "some harm" to obtain reversal. *Id.*, *citing Almanza*, 686 S.W.2d at 171. By contrast, when, as here, the defendant fails to preserve error at trial, the record must demonstrate "egregious harm" to obtain reversal.[3] *Id.* at 743-44, *citing Almanza*, 686 S.W.2d at 171). Egregious harm affects the very basis of the case, deprives the defendant of a valuable right, vitally affects the defensive theory, or makes a case for conviction clearly and significantly more persuasive. *Id.* at 750. In other words, egregious harm denies the defendant a fair and impartial trial. *Id.* In determining whether the defendant suffered actual harm, not just theoretical harm, we review: (1) the entire charge; (2) the state of the evidence, including the contested issues and the weight of the probative evidence; (3) the arguments of counsel; and (4) any other relevant information revealed by the record. *Id.* at 750 n.48.

### 1. Error

As mentioned previously, the State concedes that the jury charge was erroneous because it omitted the aggravating element that Ribail feared her death was imminent. A trial court commits error when it deviates from the statutorily-mandated language by adding or deleting language. *See Villarreal v. State*, 205 S.W.3d 103, 105 (Tex.App.--Texarkana 2006, pet. dism'd, untimely filed); *Hill v. State*, 30 S.W.3d 505, 509 (Tex.App.--Texarkana 2000, no pet.). Here, the relevant statutorily-mandated language is found in Section 22.021 of the Penal Code. Under this section, a person commits the offense of aggravated sexual assault if he: (1) intentionally or knowingly causes the penetration of sexual organ of another person by any means, without that person's

---

[3] As noted above, Sanchez failed to object to the portions of the trial court's charge about which he now complains.

consent; and (2) by acts or words places the victim in fear that death will be *imminently* inflicted on any person. TEX.PENAL CODE ANN. § 22.021(a)(1)(A)(i), (a)(2)(A)(ii)(West Supp. 2012)[Emphasis added]. The trial court erred in omitting statutorily-mandated language.

## 2. Egregious Harm

The State contends that because Sanchez failed to object at trial to the relevant portions of the trial court's charge, he was entitled to a new trial only if he established that he suffered egregious harm. Sanchez, on the other hand, contends that he preserved error "via motion for new trial." However, Sanchez does not argue that raising a claim of charge error in a motion for new trial preserves his complaint for review under the "some harm" standard established in *Almanza*. Rather, Sanchez argues that, because he raised his claim in a motion for new trial, we are obligated to review it under an abuse-of-discretion standard. The problem is, as noted above, the Court of Criminal Appeals rejected this argument in *Igo* and *McKnight*.[4]

Sanchez did not preserve his claim of charge error by raising it in a motion for new trial. Accordingly, the trial court could only have granted Sanchez's motion for new trial if he established that he suffered egregious harm.

### a. Entire Jury Charge

---

[4] In concluding in *Igo* that the *Almanza* harm standard, rather than the traditional abuse-of-discretion standard, applied to appellate review of charge errors presented in a motion for new trial, the Court of Criminal Appeals stated:

> If appellant were correct, defendants would no longer be required to preserve a jury-charge error at trial so long as the issue was raised in a motion for new trial because any error in the charge could be said to 'misdirect' the jury. That result contradicts the policy of encouraging the timely correction of errors, which is embodied both in Article 36.19 and in our own rules of appellate procedure. Appellant's reasoning would essentially exempt any jury-charge error from any sort of harmless-error analysis even when the erroneous instruction might have been fixed had the defendant brought the error to the trial court's attention. Such a result would essentially eviscerate the two-tiered harm analysis required by statute and do away with the requirement that egregious harm be shown when the defendant has failed to timely urge an objection.

*Igo*, 210 S.W.3d at 647.

6

The jury charge, as a whole, weighs in favor of concluding that Sanchez suffered egregious harm. As mentioned above, both the definition of aggravated sexual assault and the application paragraph in the charge define the offense without reference to the aggravating element that Ribail feared her death was imminent. These are the critical portions of the charge, and the remaining portions of the charge do not ameliorate the error. Nothing in the charge alerts the jury that it is required to find beyond a reasonable doubt that Ribail feared her death was imminent in order to convict Sanchez of aggravated sexual assault.

### b. The Contested Evidence

The probative evidence regarding the aggravating element of the offense, *i.e.*, that Ribail feared her death was imminent, was significant and weighs in favor of concluding that Sanchez did not suffer egregious harm. To find that Ribail feared imminent death due to Sanchez's acts or words, the jury needed to assess whether: (1) Ribail in fact feared she was going to die immediately; (2) Sanchez's conduct was the producing cause of Ribail's fear; and (3) Ribail's fear was reasonable in light of Sanchez's conduct. *Douglas v. State*, 740 S.W.2d 890, 891 (Tex.App.--El Paso 1987, no pet.). Sanchez's argument that "there is no evidence, not even a scintilla supporting a finding of guilt on [the aggravating element of imminent infliction of death]," is not persuasive.

Based on the evidence adduced at trial, the jury could have rationally determined that these three sub-elements comprising the aggravating element were proved beyond a reasonable doubt. There is no doubt that Ribail feared imminent death due to Sanchez's conduct. Ribail testified that when Sanchez was suffocating her with a pillow, she saw a white light, asked God, "Is this the way I'm going to end?," and was scared she was going to die at that moment. Ribail also testified

7

that when Sanchez forced her to the bed and took off her pants and underwear before raping her, she was scared that he was going to beat her and kill her.

There is also no doubt that Sanchez's conduct was the producing cause of Ribail's fear of imminent death and that this fear was reasonable in light of Sanchez's conduct and the surrounding circumstances. The terror began when Sanchez kicked in the front door to Ribail's trailer, screamed at Ribail, pinned her down on the bed and the couch, grabbed her by her hair, beat her, made her bleed, and told her he did not care if she died then and there. The terror escalated when Sanchez slammed Ribail down onto the coffee table after she tried to escape, suffocated her with a pillow to the point she thought she was going to die, dragged her by her hair to the bathroom after she tried to escape again, and brandished scissors and threatened to use them if she tried anything. The terror culminated when Sanchez forced Ribail to her bed, took off her pants and underwear, disregarded her plea not to rape her, and raped her.[5]

### c. *The Jury Argument*

The parties' closing arguments did much to ameliorate the effect of the error and weigh in favor of concluding that Sanchez did not suffer egregious harm. Although the prosecutor defined aggravated sexual assault without referring to the aggravating element that Ribail feared her death was imminent, he emphasized the evidence that showed that Ribail did, in fact, believe her death was imminent. Particularly significant was the prosecutor's recitation of Ribail's testimony that she asked God if she was going to die when Sanchez was suffocating her. This was brought to the

---

[5] We are aware that Ribail's ordeal did not end after Sanchez raped her. Ribail testified that after Sanchez raped her, he did the following before releasing her: (1) made her clean herself and then lie down next to him on the bed in her trailer; (2) took her to his trailer where he brandished a gun imploring her to use it on him and then threatened to use it to kill himself; and (3) made her shower with him to clean her some more. However, we must disregard this evidence from consideration because it followed the rape and therefore did not contribute to its accomplishment. *See Douglas v. State*, 740 S.W.2d at 892 (disregarding defendant's statement to the victim after he raped that she was a "dead duck" if she called the police because it was a conditional threat following the rape and thus did not contribute to its accomplishment).

8

jury's attention again when the prosecutor summarized all that Sanchez did to terrorize Ribail before raping her, including threatening to kill her by his words and acts, and then asked the jury, "And why shouldn't she believe it at that point?   He just tried to smother her to death with that pillow . . . ."   Defense counsel also emphasized this point when he asked the jury why the pillow was not collected as evidence if it was so significant.   In so asking, he stated, in pertinent part, "and they're using a pillow and I put it on your face and you're thinking that you're going to die, according to you that you're going to die . . . ."

### d.   Other Relevant Information:   Voir Dire

As was the case with the parties' closing arguments, the prosecutor's arguments to the jury during *voir dire* ameliorated, rather than exacerbated, the effect of the error and weigh in favor of concluding that Sanchez did not suffer egregious harm.   When defining aggravated sexual assault and its elements, the prosecutor mentioned several times to the jury that the defendant's acts and words must place the victim in fear of being killed.   In one of those instances, the prosecutor elaborated to the jury that what made the offense aggravating was that the defendant, "[b]y acts or words . . . places the victim in fear that death is going to happen . . . will be imminently inflicted on the victim, on the person . . . ."

### e.   Summary

To have suffered egregious harm, Sanchez was required to establish that the omission of the aggravating element affected the very basis of his case, deprived him of a valuable right, or vitally affected a defensive theory.   He attempts to do so by arguing that the omission of the aggravating element from the charge deprived him of a valuable right because the jury could have convicted him of aggravated sexual assault without finding an essential element of the offense.

9

As support, Sanchez cites to *Flores v. State*, 48 S.W.3d 397 (Tex.App.--Waco 2001, pet. ref'd). However, *Flores* is distinguishable.

*Flores* stands for the proposition that a jury charge is fundamentally defective and thus egregiously harmful *per se* when it authorizes conviction for conduct that is not an offense. *See Flores*, 48 S.W.3d at 402 (holding that jury charge permitting jury to convict defendant of criminally negligent homicide, a lesser-included offense of murder, was egregiously harmful *per se* because the application paragraph, which charged defendant with two alternative means of causing the death of the victim, omitted the words "which caused the death of [victim]" from the application paragraph on the second alternative means). This is not the case here. As established above, the evidence was sufficient for the jury to have determined that Sanchez, by words and acts, placed Ribail in fear that her death was imminent. Sanchez was therefore not deprived of a jury determination beyond a reasonable doubt as to this aggravating element. Thus, while we agree that the omission of the aggravating element was erroneous, we cannot conclude that the omission in this case constitutes egregious harm.

Considering and weighing the jury charge, contested evidence, closing arguments of counsel, and *voir dire*, we conclude that Sanchez has failed to show that he was egregiously harmed as a result of the error in the charge. We therefore hold that the trial court erred in granting the motion for new trial. Accordingly, we sustain the State's sole issue.

## CONCLUSION

The trial court's order granting Sanchez's motion for new trial is reversed. This case is remanded to the trial court for entry of judgment in accordance with the jury's verdict.

10

October 17, 2012

CHRISTOPHER ANTCLIFF, Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.

(Publish)