COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| GILBERT SANCHEZ, | § | No. 08-11-00137-CR |
| Appellant, | § | Appeal from the |
| v. | § | 120th Judicial District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20100D02745) |
| | § | |

## **O P I N I O N**

Gilbert Sanchez appeals his conviction for aggravated sexual assault.  In three issues, Appellant maintains that (1) he suffered egregious harm from a defective jury charge that failed to address the critical "imminence of harm" element of aggravated sexual assault, (2) the court should have granted a mistrial during the punishment phase based on a witness's comments that she was "victim number nine," and (3) trial counsel rendered constitutionally ineffective assistance during cross-examination.  We affirm.

### **BACKGROUND**

#### *Factual History*

In December 2009, Appellant and Jeanette Ribail had been dating for more than a month. During that period of time, Appellant and Ribail had a consensual sexual relationship.  However,

Ribail decided to break off her relationship with Appellant after Ribail's cousin recognized Appellant as the ex-husband of a former co-worker. Appellant's cousin warned Ribail that Appellant was "bad news." After Ribail asked Appellant about what her cousin had said, Appellant became very upset. Ribail attempted to gradually distance herself from Appellant, but he continued to try and contact her, wanting to know why she was withdrawing.

On December 30, 2009, Appellant tracked down Ribail at her sister's trailer and told her he wanted to speak with her about their relationship. Ribail stated that Appellant appeared to be intoxicated. While Appellant was outside smoking, Ribail exited through the back door and went back to her own trailer. Ribail testified that Appellant called her numerous times once he realized she had left, and that after she refused to answer, he came to her trailer and broke down the door after banging on her windows and screaming. Ribail further testified that Appellant climbed on top of her and began screaming obscenities at her, and that a physical altercation ensued after she attempted to push him off, with Appellant punching her, attempting to smother her with a pillow, and telling her that he did not care if she died. Appellant then dragged her by her hair to the bathroom, then forced her to clean the blood off her body after threatening her with a pair of scissors, stating that he would use them on her if she attempted to leave and telling her that she and him needed to talk about their relationship. He then told her it was time to go to the bedroom and grabbed her arm. Ribail indicated to Appellant she did not want to have sex by shaking her head no, but Appellant proceeded to have intercourse with her over her protest. Ribail testified that she cried during the rape but did not physically resist because she was afraid for her life.

An investigator who performed a rape kit testified that initial forensic testing indicated the presumptive presence of seminal fluid on Ribail's body. However, further testing

demonstrated that no spermatozoa cells were contained inside the seminal fluid.

## *Procedural History*

A jury found Appellant guilty of aggravated sexual assault, and he was sentenced to 65 years' in prison. Sanchez appealed to this Court. Sanchez also moved for a new trial in the trial court, asserting that the jury charge was defective, the evidence on the issue of imminence was legally insufficient, and that the court should have granted a mistrial on punishment due to Ribail's prejudicial comments. While Sanchez's appeal was pending, the trial court granted Sanchez a new trial, but did not specify in writing which ground it relied on in granting the motion, nor did it provide findings of fact or conclusions of law when requested. The State appealed, and we abated Sanchez's appeal pending the outcome of the State's appeal. On State's appeal, we reversed the lower court's grant of a new trial and reinstated Sanchez's conviction. *State v. Sanchez*, 393 S.W.3d 798 (Tex.App.--El Paso 2012, pet. ref'd). The Court of Criminal Appeals refused to grant Sanchez's petition for discretionary review. On October 7, 2013, the United States Supreme Court denied certiorari, making Sanchez's conviction final. *Sanchez v. State*, 134 S.Ct. 221, 187 L.Ed.2d 144 (2013). Mandate issued in *Sanchez I*, and we reinstated Sanchez's original appeal. This opinion addressing the merits of Sanchez's original points as follows.

## DISCUSSION

### *Jury Charge Error*

In Issue One, Appellant contends that the jury charge erroneously failed to specify that Ribail's fear of death was imminent, thereby allowing the jury to find him guilty of an aggravated offense without first assessing whether proof beyond a reasonable doubt existed on the improperly articulated aggravating element. The State concedes that failure to include an

imminence component as part of the aggravating element was error, but argues that our previous decision in the State's appeal that Appellant suffered no resultant egregious harm governs under the law of the case. We agree.

Law of the case is a court-created doctrine providing that, absent exceptional circumstances, our resolution of an issue in an initial appeal generally controls our disposition of the same issue in subsequent appeals arising from the same case. *Howlett v. State*, 994 S.W.2d 663, 666 (Tex.Crim.App. 1999); *Ojeda v. State*, 08-02-00404-CR, 2004 WL 2137653, at *8 (Tex.App.--El Paso Sept. 24, 2004, pet. ref'd)(not designated for publication); *cf. York v. State*, 342 S.W.3d 528, 553 (Tex.Crim.App. 2011)(Womack, J., concurring)(noting, in double jeopardy context, that similar estoppel concept of issue preclusion prevents "a party from relitigating an issue . . . that was previously determined in a suit between the same parties"). The rule promotes consistency over time and "eliminates the need for appellate courts to prepare opinions discussing previously resolved matters" while still giving us the flexibility to "reconsider [our] earlier disposition of a point of law" in light of "circumstances that mitigate against relying on [our] prior decision." *Howlett*, 994 S.W.2d at 666. Such circumstances may include, *inter alia*, recognition that our previous ruling was "clearly erroneous," *id.*, or situations where "there has been a change in the controlling law" in the time period between our first decision and the subsequent appeal. *Carroll v. State*, 42 S.W.3d 129, 131 (Tex.Crim.App. 2001).

In our initial decision in the State's appeal, *State v. Sanchez*, 393 S.W.3d 798 (Tex.App.--El Paso 2012, pet. ref'd), *cert. denied*, 134 S.Ct. 221, 187 L.Ed.2d 144 (2013), we reversed the trial court's grant of a new trial and reinstated Sanchez's conviction, holding that he failed to establish that he suffered "egregious harm" from the unpreserved jury charge error as required

4

under *Almanza*.[1]  *See Sanchez*, 393 S.W.3d at 803-06.  We rejected Sanchez's contention that the charge was egregiously harmful *per se* under *Flores v. State*, 48 S.W.3d 397, 402 (Tex.App.--Waco 2001, pet. ref'd), because the jury charge did not authorize the jury to convict Sanchez for "conduct that is not an offense."  *Sanchez*, 393 S.W.3d at 805-06.  In weighing harm, we noted that although the jury charge language weighed in favor of a harm finding for failing to include all relevant statutory language, any harm was cured by references to imminence in voir dire and counsels' closing arguments contextually referencing Ribail's belief that her death was imminent after Sanchez tried to smother her with a pillow.  *Id*. at 804-05.  We also held that the jury could have found the three sub-elements comprising the "imminent death" element beyond a reasonable doubt.  *Id*.

Here, Appellant largely rehashes the same arguments as before.  Given that we have previously passed judgment on this exact issue, we find that law of the case governs and rely on our previous ruling.  Appellant did not suffer egregious harm from the erroneous jury charge.

Issue One is overruled.

### *Mistrial*

In Issue Two, Appellant asserts that the trial court abused its discretion by failing to grant a mistrial at punishment after a witness twice gave non-responsive testimony in which she referred to herself as being "victim number nine."  We disagree.

### Standard of Review and Applicable Law

"A mistrial is the trial court's remedy for improper conduct that is so prejudicial that expenditure of further time and expense would be wasteful and futile."  *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex.Crim.App. 2004)[Internal quotation marks omitted].  We review the trial

---

[1] *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984), *superseded on other grounds by rule as stated in Rodriguez v. State*, 758 S.W.2d 787 (Tex.Crim.App. 1988); *see also Igo v. State*, 210 S.W.3d 645, 646-47 (Tex.Crim.App. 2006)(applying *Almanza* to jury charge errors presented in motion for new trial).

court's mistrial ruling for abuse of discretion. *Coble v. State*, 330 S.W.3d 253, 292 (Tex.Crim.App. 2010). "[A] mistrial should be granted only in cases where the reference was clearly calculated to inflame the minds of the jury or was of such damning character as to suggest it would be impossible to remove the harmful impression from the jurors' minds." *Young v. State*, 283 S.W.3d 854, 878 (Tex.Crim.App. 2009)[Internal citation and quotation marks omitted]. "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Hawkins*, 135 S.W.3d at 77.

Witness comments or outbursts "which interfere[] with the normal proceedings of a trial will not result in reversible error" unless there is a reasonable probability "that the conduct interfered with the jury's verdict." *Coble*, 330 S.W.3d at 292. "An instruction to disregard ordinarily renders testimony referring to or implying extraneous offenses harmless." *Brown v. State*, 08-11-00347-CR, 2013 WL 1281917, at *2 (Tex.App.--El Paso Mar. 28, 2013, pet. ref'd)(not designated for publication). In assessing prejudice, we balance three factors: (1) "the magnitude of the [remark's] prejudicial effect[;]" (2) any curative measures adopted at the trial level; and (3) the certainty of the punishment outcome, including the strength of the evidence underlying the punishment. *Archie v. State*, 221 S.W.3d 695, 700 (Tex.Crim.App. 2007); *see also Brown*, 2013 WL 1281917, at *2.

### Analysis

During her testimony at the punishment phase of trial, Ribail twice made references to her status as "victim number nine." The first reference came during prosecution questioning about Ribail's feelings toward Appellant:

| [PROSECUTION]: | How do you feel about men now? Well, not men, just him. How do you feel about him? |
|---|---|
| [RIBAIL]: | I feel sorry for him because now he's going |

6

|  |  |
|---|---|
|  | to get what he deserves. |
| [DEFENSE COUNSEL]: | I'm sorry. I didn't get that response, Judge. |
| [RIBAIL]: | I feel sorry for him and he's going to get what he deserves, because it took -- I'm victim number nine, and it took -- |
| [DEFENSE COUNSEL]: | At this point, Judge, objection. My [sic] we approach? |

The second reference came during re-direct examination, when the State asked Ribail if she wanted Appellant to get probation, and she responded, "No. I'm victim number nine." Defense counsel objected again, and the court admonished the State to speak with the witness and have her only answer the question asked. The trial court also issued an instruction to disregard *sua sponte*.

The State advances a three-fold argument against mistrial. First, the State contends that it proved up the existence of at least nine people who Appellant victimized "physically, sexually, emotionally, and/or financially," rendering Ribail's comment about being victim number nine factually accurate. Second, the State argues Ribail's comment regarding other bad acts could have been cured by an instruction to disregard. Third, the State maintains that the overwhelming weight of other punishment evidence shows that the jury did not rely on those comments in reaching its verdict.

We question whether the jury actually took Ribail's comments to mean that she was Appellant's ninth rape victim and not merely someone in a line of people he victimized generally, and we acknowledge the gravity of such a remark at the sentencing stage. *See Archie*, 221 S.W.3d at 700 (taking gravity of comment as factor in assessing mistrial ruling). However, we agree with the State that in this instance, the instruction to disregard and the cumulative weight of the punishment evidence rendered the comments' prejudice minimal.

7

In *Williams v. State*, 14-11-00148-CR, 2013 WL 1187426 (Tex.App.--Houston [14th Dist.] Mar. 21, 2013, no pet.)(mem. op., not designated for publication), the Houston Fourteenth Court of Appeals held that the trial court's instruction to disregard cured any prejudice arising from a witness's comment that the defendant "murdered people[.]" *Id.* at *8-*9. It also held that the amount of evidence of other bad acts presented at punishment made it unlikely that the jury's verdict was unduly swayed by the stray comment referencing other bad acts. *Id.* at *10-*1. Here, the factual circumstances are very similar. The trial court issued an instruction to the jury to disregard both comments and admonished the State to control the witness and only have her answer the question asked, evidencing curative measures. The trial court's corrective actions mitigated any prejudice under the second *Archie* factor. *See Archie*, 221 S.W.3d at 700; *Young*, 283 S.W.3d at 878. Further, the State presented a large corpus of evidence demonstrating that Appellant had *inter alia* been previously convicted of assault, filed a false police report to have someone arrested, stolen $4,100 from his own mother, and physically and sexually abused prior girlfriends. Given the strength of the underlying punishment evidence, we are satisfied after balancing the *Archie* factors that Ribail's comments did not substantially affect the jury's punishment verdict. The trial court properly exercised its discretion in denying Appellant's motion for a mistrial.

Issue Two is overruled.

### *Ineffective Assistance of Counsel*

In Issue Three, Appellant argues that trial counsel rendered constitutionally ineffective assistance by making remarks that undermined the defense theory that Appellant did not sexually penetrate Ribail. Specifically, Appellant contends trial counsel's statement during Ribail's cross-examination that Appellant had a vasectomy provided the jury with an explanation as to

8

why investigators found seminal fluid with no spermatozoa cells during Ribail's sexual assault examination. The State counters that Appellant failed to show sufficient evidence to rebut the presumption of competence. We agree.

### Standard of Review and Applicable Law

"For a claim of ineffective assistance of counsel to succeed, the record must demonstrate[,]" by a preponderance of the evidence, "both deficient performance by counsel and prejudice suffered by the defendant." *Menefield v. State*, 363 S.W.3d 591, 592 (Tex.Crim.App. 2012); *see also Perez v. State*, 310 S.W.3d 890, 892-93 (Tex.Crim.App. 2010). Counsel's representation is constitutionally deficient where it falls "below an objective standard of reasonableness based unpon prevailing professional norms." *Id.*, *citing Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 2064-65, 80 L.Ed.2d 674 (1984). To demonstrate prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Perez*, 310 S.W.3d at 893. "The two prongs of *Strickland* need not be analyzed in a particular order-the prejudice prong may be analyzed first and the performance prong second." *Ex parte Martinez*, 330 S.W.3d 891, 900 n.19 (Tex.Crim.App. 2011).

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Holland v. State*, 761 S.W.2d 307, 320 (Tex.Crim.App. 1988). We strongly presume that counsel is competent, and that his actions were strategic and fell within the scope of reasonable professional assistance. *Bone v. State*, 77 S.W.3d 828, 836 (Tex.Crim.App. 2002). Appellant may rebut that presumption where he shows, by a preponderance of the evidence, "that there is, in fact, no plausible professional reason for a

9

specific act or omission." *Bone*, 77 S.W.3d at 836. "Ordinarily on direct appeal, the record is too underdeveloped to sustain the serious charge of ineffective assistance absent examination of counsel at a motion for new trial hearing." *Murray v. State*, 08-12-00062-CR, 2014 WL 340384, at *3 (Tex.App.--El Paso Jan. 29, 2014, no pet.)(not designated for publication). Thus, we generally do not reverse for ineffectiveness on direct appeal absent an explanation from trial counsel "unless the challenged conduct was so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex.Crim.App. 2005)[Internal quotation marks omitted]. While a "single egregious error of omission" by counsel could theoretically rise to the level of ineffective assistance, *Ex parte Harrington*, 310 S.W.3d 452, 459 (Tex.Crim.App. 2010), generally speaking, "[e]ffectiveness is judged by the record as a whole and not by isolated errors." *Murray*, 2014 WL 340384, at *3. "If counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been grounded in legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal." *Garza v. State*, 213 S.W.3d 338, 348 (Tex.Crim.App. 2007).

**Analysis**

Here, Appellant has failed to demonstrate that counsel's trial actions fell below an objective standard of reasonableness as required by *Strickland*. Trial counsel referred to Appellant's vasectomy while he cross-examined Ribail about her prior sexual activity with Appellant, asking her, in an apparent attempt to attack her general credibility as a witness, why she requested Appellant pull out prior to ejaculation as their usual form of birth control if she knew he had a vasectomy. He also contrasted that usual practice with her claim that on this occasion, Appellant ejaculated inside her. This method of impeachment on witness credibility

was not "so outrageous that no competent attorney would have engaged in it." *Goodspeed*, 187 S.W.3d at 392; *see*, *e.g.*, *Ex parte Harrington*, 310 S.W.3d at 459 (no reasonable strategy behind counsel's advice to client to plead guilty to felony DWI following failure to investigate client's truthful claim that a prior conviction used for felony enhancement erroneously identified him as the convicted party). Nor was the error – assuming *arguendo* it was, indeed, an error and not deliberate – so egregious that it "had a seriously deleterious impact on the balance of the representation." *Frangias v. State*, 392 S.W.3d 642, 653 (Tex.Crim.App. 2013). As such, we apply the presumption that trial counsel was competent and his moves strategic. Further, since the record is silent as to what trial counsel's motivations were in engaging in this line of questioning, and since questioning on this topic could have conceivably been calculated to impeach Ribail's credibility, we find that Appellant has failed to proffer sufficient evidence to rebut the presumption. *Garza*, 213 S.W.3d at 348. Thus, his claim for ineffective assistance of counsel is without merit.

Issue Three is overruled. We affirm Appellant's conviction.


June 20, 2014
                                    YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

(Do Not Publish)


11