COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  | § |  |
|---|---|---|
| STEVEN WESLEY BARKER, | § | No. 08-13-00223-CR |
| Appellant, | § | Appeal from the |
| v. | § | County Court at Law |
| THE STATE OF TEXAS, | § | of Hood County, Texas |
| Appellee. | § | (TC# 45124) |
|  | § |  |

# **O P I N I O N**

Appellant Steven Wesley Barker seeks reversal of his conviction on one count of assault. In three issues, he contends that the trial court violated his due process right to testify on his own behalf, that he should have received certain defensive jury instructions, and that his conviction for this crime is barred by either a plea agreement he reached in a separate criminal case or by the trial court's initial dismissal of his indictment. We affirm.[1]

## BACKGROUND

### *Factual History*

Prior to the charged assault, Appellant bailed Tonya Rae Scott out of jail. Appellant agreed to let Scott stay at his house. However, Scott later left Appellant's house to stay with

---

[1] We hear this case on transfer from the Second Court of Appeals in Fort Worth.

George Moore because she believed that Appellant was trying to seek a romantic relationship with her. Appellant also allegedly struck her in the back of the head the night she left.

The next day, Appellant and Scott agreed to get along. Appellant, Moore, and Scott agreed to spend the day at a nearby lake, where they consumed alcohol. Scott, Moore, and Appellant rode back in Moore's single-cab pick-up truck. Moore drove the truck, Scott sat in the middle, and Appellant sat on the passenger side. The three had open containers of beer in the truck cab. At this point, the witnesses' narratives diverge.

Scott testified that as she reached for the cigarettes, Appellant swatted her hand. She swore at Appellant, and he began punching her body. Moore then put his arm around Scott and told Appellant to stop hitting her. Appellant complied. When Moore removed his arm from Scott, she slapped Appellant across the face "out of fear." Appellant then began punching her again, eventually breaking her jaw. Scott testified that during the assault she "played dead pretty much" and "just laid there." Eventually the three returned to Moore's trailer. Scott said that she ran from the truck and hid under the trailer until Moore and Appellant decided to leave, then she ran to a neighbor's house. Scott suffered a fractured jaw and a concussion.

Moore testified that out of his peripheral vision he saw Scott hit Appellant in the face first, and then Appellant began punching her. Moore further testified that he slowed down his truck and told Scott and Appellant that if they did not stop fighting, he would force both of them out of the truck.

At trial, Barker waived his Fifth Amendment privilege and testified in his own defense. He admitted that he, Scott, and Moore had all been drinking that day. He maintained that he did nothing to provoke Scott and that she hit him first with a beer can in the cab of the truck. Barker testified that he then slapped her in the back of the head. He stated that he believed he was

2

defending himself by hitting Scott after she hit him. Scott then struck him again, at which point Barker admitted that he "nailed the shit out of her in the head." Barker admitted that Scott hitting him probably did not cause him any pain because he was drinking. He also testified that he could not have caused Scott's jaw fracture because she was sitting to his left, he is left-handed, and there was not enough room in the truck to hit her hard enough to break her jaw.

### *Procedural History*

The State charged Appellant with assaulting Tonya Rae Scott by striking her in the jaw with a closed fist. Prior to trial, Appellant moved to dismiss the case, arguing that (1) the evidence was insufficient to allow the State to move forward to trial and that (2) continued prosecution of this case was barred by a plea agreement he reached with the State on August 16, 2012, in a revocation hearing for a driving while intoxicated case (the DWI Plea Agreement). The State responded that Appellant presented improper grounds for a motion to dismiss by asserting evidentiary insufficiency. It also disputed Appellant's contention that the DWI Plea Agreement governed this case, and in support of its position, attached what was purportedly a copy of the trial transcript from a revocation hearing. The trial transcript contains a handwritten annotation: "Rough Draft." Missing from the transcript are the date of transcription, the cause number, the name of the parties, the court of record, the court reporter's name, and the standard authenticating certification statement.

The trial court initially granted Appellant's motion to dismiss before reversing its dismissal order, reinstating the case, and setting it for trial. Following trial, the jury returned a guilty verdict. This appeal followed.

### DISCUSSION

In three issues, Appellant maintains that the trial court violated his right to testify in his

own defense, his right to receive jury instructions on self-defense and the duty to retreat, and his right to be free from successive prosecutions under the Double Jeopardy Clause of the U.S. Constitution. We find no reversible error.

## I.

### *Limitations on Defendant's Trial Testimony*

In Issue One, Appellant argues that the trial court's rulings sustaining State objections on relevance and non-responsiveness grounds during redirect examination violated his state and federal due process rights by effectively depriving him of a fair opportunity to "tell his story" at trial. We disagree.

### Standard of Review

Ordinarily, we review the trial court's evidentiary rulings for abuse of discretion and then, if necessary, apply the TEX.R.APP.P. 44.2(b) harm analysis, disregarding evidentiary error unless it affected "substantial rights." *Walters v. State*, 247 S.W.3d 204, 217-19 (Tex.Crim.App. 2007). However, "an erroneous ruling excluding evidence might rise to the level of a constitutional violation if it effectively prevents the defendant from presenting his defensive theory." *Id.* at 221. When a trial court abuses its discretion by erroneously excluding evidence, and such exclusion rises to the level of a constitutional violation, we apply the TEX.R.APP.P. 44.2(a) harm test used for constitutional errors. *Walters*, 247 S.W.3d at 219. Under that test, "[i]f the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX.R.APP.P. 44.2(a).

"Exclusion of evidence might rise to the level of a constitutional violation if: (1) a state

4

evidentiary rule categorically and arbitrarily prohibits the defendant from offering otherwise relevant, reliable evidence vital to his defense; or (2) a trial court's clearly erroneous ruling results in the exclusion of admissible evidence that forms the vital core of a defendant's theory of defense and effectively prevents him from presenting that defense." *Walters,* 247 S.W.2d at 219. Evidence that only would have "incrementally" furthered a defensive theory is "not of constitutional dimension." *Id*. at 222.

### Analysis

Appellant bases his claim on the following exchange that occurred between Appellant, the State, and the trial court on redirect examination:

> Q. Now leading up to this, you know, you feel like you haven't had a chance to tell the whole story?
>
> A. Yes, you know, it's like --
>
> Q. What's the whole story?
>
> A. Can I speak for a minute? I understand what I did I shouldn't have done, I understand that, and I'm not saying I didn't do it, right? There's a cause and there's a reaction and everybody knows that. There's a reaction for every cause, I know that. There was a reaction for me when I was a kid for what I did when I was a kid, it cost me the time of my life.
>
>> MRS. KASPAR: Objection, Your Honor, nonresponsive. This has nothing to do with this.
>>
>> THE COURT: Sustained. Sustained. You have an opportunity to answer questions, all right? Ask a question, please.
>
> Q. (BY MR. PILAND) Okay. What was your frustration leading up to this?
>
> A. When I first met Ms. Scott she was homeless. This all leads up to all of it. She was a homeless woman. I had a friend of mine call me to come over there so I went over there, I met with this woman, we drunk some beer --
>
> Q. Did you do anything for her?
>
> A. Yes.

Q. What did you do?

A. We went down to the lake and I got to know her a little bit, felt sorry for her, so I offered her -- I give her a place to live. I even offered to take her up to Missions because I knew they have a shelter for women. She didn't want to go to Missions, she didn't want nothing to do with it. She told me that she was having problems with her boyfriend, which, you know -- so we went back up to the house to get my car, and as we were getting to the car we've got this guy in a white car sitting out there in the driveway. Well, come to find out it was her boyfriend from Glen Rose.

> MRS. KASPAR: Your Honor, I'm going to object to the relevance of all this. I don't know how this is relevant to the incident in the truck
>
> THE DEFENDANT: Y'all asked me what happened.
>
> THE COURT: Counsel?
>
> MR. PILAND: Your Honor, he's frustrated because he wants to tell his story. I suggest we let him tell his story.
>
> MRS. KASPAR: I'd suggest we don't have time for him to tell his story.
>
> THE COURT: We need to keep it to relevant evidence. What we're talking about is a June 16th assault, okay? Your objection is sustained.

Q. (BY MR. PILAND) Keep it to June 16th. Is there anything you want to offer on what happened on June 16th that would be relevant for a jury to make a determination of whether you engaged in self-defense.

A. I was assaulted by her. There was more to the story that they ain't going to let us tell you and I apologize for that because I know it makes a big thing, you know, but there was more that led to it -- the whole day incident, it all leads up to it, but I can't tell that part. But I did hit the woman. I ain't denying that. She hit me first. Mr. Moore even told y'all that he (sic) hit me first. Maybe I was a little bit aggressive because I am a man. I hit her. I only hit her twice. That's all I hit her. I did not hold her down and beat the crap out of her like she makes it seem. If I did that, I'd tell you I did that. I didn't do that. I did assault the woman. She assaulted me first. I understand if y'all convict me of assault, I've got to do -- I understand the year and I am more than willing to take it.

> MRS. KASPAR: I'm going to object, Your Honor, nonresponsive. This is not proper for guilt/innocence.
>
> THE COURT: Sustained.

6

Q. (BY MR. PILAND) Let me ask you this: Are you saying that if you had assaulted her like she said, that you would come before this jury and admit to it?

A: Yes, sir. If you look at my criminal record that they want to present, I admit to everything I've done in my life.

Q. Okay. Well, how many years in the pen did you spend?

A. I did ten years in the penitentiary and nine years on parole.

Q. All right. And so, you know that you're charged with hitting her with your fist; you know that, right?

A. Yes, sir.

Q. And did you do that or not?

A. I did hit her with my fist.

Q. Okay. Did you do it in self-defense?

A. Yes, sir.

      MR. PILAND: No further questions.

      MRS. KASPAR: Nothing further, Your Honor.

As a threshold matter, we note that a party may claim error in a ruling that excludes evidence only where "a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context." TEX.R.EVID. 103(a)(2). "In order to preserve error regarding a trial court's decision to exclude evidence, the complaining party must make an 'offer of proof' which sets forth the substance of the proffered evidence." *Balderama v. State*, 421 S.W.3d 247, 250 (Tex.App.--San Antonio 2013, no pet.). Here, Appellant never made an offer of proof disclosing what his testimony would have been, and although he and counsel both alluded to undisclosed evidence that would allegedly have a bearing on self-defense, neither explicitly made clear what that information was. As such, there is no error preserved for our

review.  *Balderama*, 421 S.W.3d at 250.

Even if the substance of Appellant's excluded testimony were apparent from context, we find that the trial court did not abuse its discretion in sustaining the State's objections to Appellant's long narrative testimony.  Counsel's questions were broadly open-ended, and much of the content of Appellant's testimony was not strictly relevant to guilt, innocence, or Appellant's self-defense claim.

Finally, assuming *arguendo* that the trial court erred by excluding this testimony, error was harmless even under the more stringent constitutional harm analysis.  Appellant readily admitted to striking Scott at least twice and admitted that he did not feel any pain from Scott hitting him.  The jury also heard testimony from Scott that her jaw was fractured as a result of Scott's attack and was able to judge for themselves whether Appellant's belief that he used necessary and proportional force to act in self-defense was reasonable in the immediate context of the situation.  Any backstory on animosity between Appellant and Scott would not have borne strongly on the jury's evaluation of Appellant's self-defense claim within the immediate context of the truck cab.

In sum, error was unpreserved, the trial court did not abuse its discretion in excluding the evidence, and even if it did, error was harmless even if it vitally affected Appellant's self-defense theory, which it did not.

Issue One is overruled.

## II.

### *Jury Instructions: Self-Defense and Duty to Retreat*

In Issue Two, Appellant complains that the trial court failed to instruct the jury on the no-duty-to-retreat doctrine when drafting its charge on the law of self-defense.  We find that error, if

8

any, was harmless.

## Standard of Review

A defendant is entitled to a jury instruction that is raised by the evidence. *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex.Crim.App. 2001). "This is true regardless of whether such evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of this evidence." *Hayes v. State*, 728 S.W.2d 804, 807 (Tex.Crim.App. 1987). We review jury charge error claims under a two-step process. *State v. Sanchez*, 393 S.W.3d 798, 802 (Tex.App.--El Paso 2012, pet. ref'd), *cert. denied,* 134 S.Ct. 221, 187 L.Ed.2d 144 (2013). First, we must determine whether error, in fact, exists. If so, we then ascertain whether the error was harmful. *Id.* The level of harm necessary to justify reversal of a criminal conviction depends on whether the appellant objected to the charge at trial. *Id.* at 802. If the defendant did object, we will reverse on a showing of "some harm." If the defendant failed to object, we will only reverse the conviction upon a showing of "egregious harm." *Id.* at 802-03. The Court of Criminal Appeals has stated that the "some harm" standard means that "any harm, regardless of degree, is sufficient to require reversal." *Druery v. State*, 225 S.W.3d 491, 504 (Tex.Crim.App. 2007).

## Analysis

The record reflects that Appellant lodged a written objection to the trial court's proposed charge and requested that it include a presumption-of-reasonableness instruction and a no-duty-to-retreat instruction. As such, we review error for "some harm." *Id.*

Under TEX.PENAL CODE ANN. § 9.31 (West 2011)(the General Self-Defense Instruction), "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or

9

attempted use of unlawful force." The second clause of Section 9.31 (the Presumption of Reasonableness Instruction) goes on to establish the conditions under which the jury must presume that the defendant's belief that use of force was immediately necessary was reasonable.

Section 9.31(b) sets out a list of situations in which the use of force is not justified, including "in response to verbal provocation alone[.]" TEX.PENAL CODE ANN. § 9.31(b)(1) (Verbal Provocation Instruction). Section 9.31(e)(No Duty to Retreat Instruction) establishes that "[a] person who has a right to be present at the location where the force is used, who has not provoked the person against whom the force is used, and who is not engaged in criminal activity at the time the force is used is not required to retreat before using force as described by this section." TEX.PENAL CODE ANN. § 9.31(e); *see also id.* at § 9.31(f).

Appellant received the General Self-Defense Instruction, and the State received the Verbal Provocation Instruction. The trial court refused to include the Presumption of Reasonableness Instruction and the No Duty to Retreat Instructions. On appeal, Appellant contends that the failure to grant him the No Duty to Retreat Instructions was error. Assuming without deciding that the trial court did err, such error was harmless.

First, as the State noted in its brief, the instruction was unnecessary because it would have been physically impossible for Appellant to "retreat" from Scott inside the cab of a moving truck. The State also did not argue in closing arguments that Appellant had a duty to retreat from Scott. Appellant also admitted to hitting Scott with more force than she used against him, which would and apparently did vitiate his self-defense arguments in the eyes of the jury, and a duty to retreat instruction would have no bearing on whether his use of force was ultimately appropriate. Under these facts, it is clear that Appellant was not harmed by the trial court's failure to include these instructions.

Issue Two is overruled.

## III.

### *Double Jeopardy*

Finally, in Issue Three, Appellant contends that his conviction for assault in this case violates the Double Jeopardy Clause, since he and the State reached a plea agreement in a separate driving while intoxicated case that purportedly encompassed the disposition of the assault charge at bar. Alternatively, Appellant argues that the trial court's initial dismissal of assault indictment in this case triggered double jeopardy protection against future prosecutions for the same charge. We disagree on both counts.

### Standard of Review and Applicable Law

"Where there are no underlying questions of fact, double jeopardy is a question of law we review *de novo*." *Ovalle v. State*, No. 03-08-00334-CR, 2009 WL 1708826, at *5 (Tex.App.--Austin June 19, 2009, pet. ref'd)(mem. op., not designated for publication). "The Double Jeopardy Clause protects criminal defendants from three things: 1) a second prosecution for the same offense after acquittal; 2) a second prosecution for the same offense after conviction; and 3) multiple punishments for the same offense." *Ex parte Milner*, 394 S.W.3d 502, 506 (Tex.Crim.App. 2013).

Double jeopardy claims are subject to unique preservation rules under Texas appellate jurisprudence. The Texas Court of Criminal Appeals has held that the right to be free from double jeopardy is not a systemic right that may be raised at will on appeal, nor are double jeopardy protections considered to be "waivable" rights that may be addressed on appeal absent a knowing, voluntary, and intelligent waiver in the trial court. *Gonzalez v. State*, 8 S.W.3d 640, 644-45 (Tex.Crim.App. 2000). Nevertheless, double jeopardy complaints are also not subject to

11

the ordinary TEX.R.APP.P. 33.1 preservation analysis used for non-constitutional errors like evidentiary rulings because double jeopardy is of a constitutional dimension. *Gonzalez*, 8 S.W.3d at 643, 648. In determining whether a defendant has "preserved" double jeopardy error for review on direct appeal when he did not object in the trial court, we consider two factors: (1) whether a double jeopardy violation is apparent from face of the record and (2) whether the enforcement of the usual rules of procedural default serve no legitimate state interests. *Id*. at 643.

Usually, when assessing double jeopardy claims, we resort to the *Blockburger*[2] test and determine whether each charged crime contains elements that require proof that the other crime does not. *Ex parte Denton*, 399 S.W.3d 540, 545-46 (Tex.Crim.App. 2013). However, double jeopardy may bar the State from prosecuting charges that were dealt with as part of a plea bargain, even if prosecution of those charges would be permissible under *Blockburger*. "[I]n a negotiated plea proceeding, jeopardy attaches when the trial court accepts the plea bargain." *Ortiz v. State*, 933 S.W.2d 102, 107 (Tex.Crim.App. 1996). Once the trial court accepts the plea agreement, the defendant is entitled to specific performance of the explicit provisions contained therein. *Perkins v. Court of Appeals for the Third Supreme Judicial Dist. of Tex. at Austin*, 738 S.W.2d 276, 283-84 (Tex.Crim.App. 1987); *In re Pharris*, No. 14-11-00786-CR, 2011 WL 4090778, at *2 n.1 (Tex.App.--Houston [14th Dist.] Sept. 15, 2011, orig. proceeding)(mem. op., not designated for publication). Additionally, once the trial court accepts the plea agreement, jeopardy attaches to all outstanding charges contained in an indictment that the State did not otherwise dismiss, waive, or abandon. *See Ex parte Dangelo*, 376 S.W.3d 776, 780 (Tex.Crim.App. 2012)(holding that probationer had no Fifth Amendment right to refuse to testify about certain sex offenses when he pleaded guilty to only one count of a five-count indictment

---

[2] *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932).

because the State—by not dismissing the other four counts prior to the trial court's acceptance of his plea—was precluded from prosecuting the other four counts under double jeopardy); *Ex parte Preston*, 833 S.W.2d 515, 518 (Tex.Crim.App. 1992)(noting that "in order to preserve a portion of a charging instrument for a subsequent trial, the State must, before jeopardy attaches . . . take some affirmative action, on the record, to dismiss, waive or abandon that portion of the charging instrument and the State must obtain permission from the trial judge to dismiss, waive or abandon that portion of the charging instrument")[Emphasis omitted].

**Analysis**

Whether we analyze this issue on the merits or treat it as an issue of preservation failure, Appellant's claim cannot succeed. When a defendant claims charges are barred by the results of a prior proceeding, the defendant is required to "present evidence in support of his allegations of double jeopardy[.]" *Berrios-Torres v. State*, 802 S.W.2d 91, 96 (Tex.App.--Austin 1990, no pet.); *see also Shaffer v. State*, 477 S.W.2d 873, 875 (Tex.Crim.App. 1971). Appellant asserts in his brief and in his motion to dismiss before the trial court that as part of his August 16, 2012, plea of true during the revocation hearing for DWI, the State agreed to let him "do 4 months and that these assault charges would not be filed." However, he maintains that evidence of this agreement does not appear in the record because the discussions "[a]s in most plea negotiations . . . [were] off the record."[3] Even so, without a record of the previous proceedings appearing in this trial record, we are incapable of determining whether this charge was, in fact, explicitly subsumed within an agreement between Appellant, the State, and the trial court. Nor are we able to determine whether jeopardy attached by virtue of the State's failure to dismiss, waive, or abandon a charge in the DWI indictment prior to the trial court's acceptance of Appellant's plea.

---

[3] Appellant was also apparently represented by a different attorney in the DWI plea negotiations. Appellant's attorney at trial and on appeal in this case was not a party to the DWI plea negotiations.

13

Indeed, without a record, we are even unable to conduct a proper *Blockburger* analysis because we do not know what conduct allegedly overlaps between the two prosecutions. Simply put, double jeopardy error vis-à-vis Appellant's DWI case is not discernable from this record. As such, we cannot reverse Appellant's conviction on direct appeal on this ground.

Finally, with respect to Appellant's alternate argument, we hold that the trial court's dismissal of the indictment did not trigger double jeopardy protections. In a jury trial, "[j]eopardy attaches when a jury is empaneled and sworn." *Hanley v. State*, 909 S.W.2d 117, 120 (Tex.App.--Houston [14th Dist.] 1995, no pet.). The defendant remains in jeopardy—and thus, subject to prosecution and re-trial—until a jeopardy terminating event occurs, at which point the defendant exits original jeopardy and is protected from subsequent "double" jeopardy. *Id*. "A jeopardy terminating event can be an acquittal or conviction." *Id*. Here, at the time the trial court dismissed Appellant's case, the jury had not yet been empaneled and sworn. Thus, although Appellant was being prosecuted, he was never placed in jeopardy in the constitutional sense. Because jeopardy never attached and terminated, the trial court did not violate Appellant's double jeopardy rights by reinstating the case following dismissal. No constitutional violation occurred.

Issue Three is overruled.

## CONCLUSION

Appellant's three appellate points are without merit. The judgment of the trial court is affirmed.

July 15, 2015

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)

14