**Opinion issued October 27, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00953-CR

———————————

**THE STATE OF TEXAS, Appellant**

**V.**

**SUSAN MARIE SCIACCA, Appellee**

---

**On Appeal from the 179th District Court**
**Harris County, Texas**
**Trial Court Case No. 1414753**

---

## O P I N I O N

This is a State's appeal from the trial court's order granting a new trial based on appellee Susan Marie Sciacca's assertion of jury charge error. Because we find that error, if any, in the jury charge was harmless, we reverse the trial court's order granting Sciacca's motion for new trial.

# BACKGROUND

## *The Confrontation between Leazer and Sciacca*

On January 17, 2014, John Leazer had lunch with his wife, and then took her back to work and left to go deposit a check at his bank. On the way to the bank, he attempted to change lanes from the center to the right so that he could turn into a business selling portable buildings that he had been meaning to check out. When he tried to enter the right lane, he almost hit a white SUV, driven by Susan Sciacca, which was traveling in that lane. Leazer testified that he signaled with his hand "my bad," returned to his own lane, and decided to not stop at the portable building business; instead, he continued on toward the bank.

Leazer testified that Sciacca dropped back behind him, passed him on the left, and then got into the lane in front of him where she "brake checked" him three times by slamming on her brakes in front on him. Leazer testified that he continued driving in the middle lane, while Sciacca remained in front of him, switching lanes several times. Finally, he saw Sciacca pull into a turning lane, as if she were going to turn left into a Kroger parking lot. He testified that he thought to himself, "Whew, it's done," and continued for about 150 yards, where he turned right into the bank parking lot.

Once he entered the bank parking lot, he turned to the right and parked in a spot away from other cars where he habitually parked because he was usually driving

2

a large pickup truck. He gathered his bank deposit slip and money and stepped out of the car, when he noticed that Sciacca had pulled in next to him, had her window down, and was pointing a silver pistol at him. For the first few seconds he felt threatened, then, when he realized that she was unlikely to shoot him, Leazer became very angry.

Leazer called the police to report Sciacca, and, while Leazer was on the phone with police, Sciacca too called 911. Appellant and Sciacca can be heard shouting at each other on the 911 tapes. Leazer testified that while he was on the phone with police, Sciacca put the gun away in the center console of her vehicle.

When police arrived, Leazer and Sciacca were still shouting at each other. When questioned, both Leazer and Sciacca claimed that the other person had followed them into the parking lot. Sciacca admitted pulling her gun, but claimed that she did so because she was afraid of Leazer, a large man with multiple tattoos who was shouting at her.

In an effort to determine who had initiated the confrontation, police reviewed the surveillance video from the bank and saw that Leazer had entered the parking lot first, and that, contrary to her statement to police, Sciacca had followed him into the parking lot. Her car was not parked straight and looked as if she had pulled into the spot in a hurry. She was also nowhere near the ATM machine and she did not

3

regularly do business at this bank, even though she claimed to police that she had turned into the parking lot to use the ATM, and that appellant had followed her.

Once police determined that Sciacca's version of the events did not match what police saw on the surveillance video, she was arrested and charged with aggravated assault in an indictment which alleged that "**SUSAN MARIE SCIACCA** . . . heretofore on or about **JANUARY 17, 2014**, did then and there unlawfully intentionally and knowingly threaten JOHN LEAZER with imminent bodily injury by using and exhibiting a deadly weapon, namely, a FIREARM."

***Trial Proceedings***

Leazer testified about the events at trial; Sciacca did not. The police officers also testified, and the 911 tapes and video surveillance tapes were also admitted.

The jury was instructed under Section 9.04 of the Penal Code, as follows:

> The threat of force is justified when the use of force is justified. A threat to cause death or serious bodily injury by the production of a weapon or otherwise, as long as the defendant's purpose is limited to creating an apprehension that she will use deadly force if necessary, does not constitute the use of deadly force.

*See* TEX. PENAL CODE ANN. § 9.04 (West 2011). Although the statutory language was included in the charge, no application paragraph was included in the charge, despite Sciacca's request that one be given.

4

The jury was also instructed on the law of self-defense and deadly force in defense pursuant to Sections 9.31 and 9.32 of the Penal Code in pertinent part as follows:

> Upon the law of self-defense, you are instructed that a person is justified in using force against another when and to the degree she reasonably believes the force is immediately necessary to protect herself against the other person's use or attempted use of unlawful force. The use of force against another is not justified in response to verbal provocation alone.
>
> A person is justified in using deadly force against another if she would be justified in using force against the other in the first place, as above set out, and when she reasonably believes that such deadly force is immediately necessary to protect herself against the other person's use or attempted use of unlawful deadly force.
>
> A person who has a right to be present at the location where the deadly force is used, who has not provoked the person against whom the deadly force is used, and who is not engaged in criminal activity at the time the deadly force is used is not required to retreat before using deadly force. You are not to consider whether the defendant failed to retreat.
>
> . . . .
>
> When a person is attacked with unlawful deadly force, or she reasonably believes she is under attack or attempted attack with unlawful deadly force, and there is created in the mind of such person a reasonable expectation or fear of death or serious bodily injury, then the law excuses or justifies such person in resorting to deadly force by any means at her command to the degree that she reasonably believes immediately necessary, viewed from her standpoint at the time, to protect herself from such attack or attempted attack, as a person has a right to defend her life and person from apparent danger as fully and to the same extent as she would had the danger been real, provided that she acted upon a reasonable apprehension of danger, as it appeared to her from her standpoint at the time, and that she reasonably believed

such deadly force was immediately necessary to protect herself against the other person's use or attempted use of unlawful deadly force.

*See* TEX. PENAL CODE ANN. §§ 9.31 & 9.32 (West 2011). The jury charge on self-defense and deadly force in defense included both the abstract paragraphs above, as well as application paragraphs.

After the jury found Sciacca "guilty of aggravated assault, as charged in the indictment," Sciacca filed a motion for new trial, asserting, among other things, that "Sciacca was denied a fair trial when the Court failed to give jurors an application paragraph in the jury instructions relating to TEX. PENAL CODE § 9.04." The trial court granted Sciacca's motion for new trial, noting "Granted as to Issue 2—Court's failure to include application paragraph."

The State then filed this appeal, contending that "[t]he trial court abused its discretion in granting a new trial based on its refusal to provide a Section 9.04 application paragraph [in the jury charge.]" *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(3) (West Supp. 2015) (permitting the State to appeal orders granting motions for new trial).

## PROPRIETY OF GRANT OF MOTION FOR NEW TRIAL

In a single issue on appeal, the State contends that

[t]he trial court abused its discretion in granting a new trial based on its refusal to provide a Section 9.04 application paragraph because the first sentence of Section 9.04 was properly applied to the facts, the second sentence of Section 9.04 was not applicable to the case, and the appellee's proposed jury instruction was incorrect.

*Standard of Review and Applicable Law*

Both parties contend, erroneously, that the trial court's order granting a new trial based on alleged charge error must be shown deference and reversed only for an abuse of discretion. However, when a motion for new trial asserts charge error pursuant to Texas Rule of Appellate Procedure 21.3(b),[1] we do not apply the traditional standard of review applicable to motions for new trial. *See State v. Sanchez*, 393 S.W.3d 798, 801–02 (Tex. App.—El Paso 2012, pet. ref'd) (citing *Igo v. State*, 210 S.W.3d 645 (Tex. Crim. App. 2006) and *State v. McKnight*, 213 S.W.3d 915 (Tex. Crim. App. 2007)). Instead, we apply *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985) (op. on reh'g). *Sanchez*, 393 S.W.3d at 802. ("It is clear that the *Almanza* harm standard, rather than the traditional abuse-of-discretion standard, applies to appellate review of charge errors presented in a motion for new trial."). *Almanza* applies regardless of whether the trial court grants or denies the defendant's motion for new trial. *See Igo*, 210 S.W.3d at 647 (trial court denies defendant's motion for new trial); *McKnight*, 213 W.W.3d at 916 (trial court grants defendant's motion for new trial).

---

[1] "The defendant must be granted a new trial . . . when the court has misdirected the jury about the law or has committed some other material error likely to injure the defendant's rights." TEX. R. APP. P. 21.3(b).

7

In analyzing a jury-charge issue, our first duty is to decide if error exists. *See Almanza*, 686 S.W.2d at 174; *Tottenham v. State*, 285 S.W.3d 19, 30 (Tex. App.— Houston [1st Dist.] 2009, pet. ref'd). Only if we find error do we then consider whether an objection to the charge was made and analyze for harm. *Tottenham*, 285 S.W.3d at 30; *see also Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008) ("The failure to preserve jury-charge error is not a bar to appellate review, but rather it establishes the degree of harm necessary for reversal.").

"The degree of harm necessary for reversal depends upon whether the error was preserved." *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). If the defendant did not, then we will reverse the trial court's judgment only if the error was so egregious and created such harm that the defendant did not have a fair and impartial trial. *See Almanza*, 686 S.W.2d at 171. However, if the defendant did properly object, then reversal is required if there was "some harm" to the defendant. *Id.*; *see also* TEX. CODE CRIM. PROC. ANN. art. 36.19 (West 2006).

Because error was preserved, reversal is required if we conclude that the error resulted in "some harm" to Sciacca'a rights. *See Oursbourn v. State*, 259 S.W.3d 159, 174 (Tex. Crim. App. 2008) (defendant must present proposed jury instruction or object to lack of one to preserve error). Although the "some harm" standard is "less stringent," it nonetheless requires a reviewing court to determine actual, rather than mere theoretical, harm. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App.

8

2013). To determine harm, we weigh the following factors: (1) the jury charge as a whole; (2) the arguments of counsel; (3) the entirety of the evidence; and (4) any other relevant factors present in the record. *Id.*; *Almanza*, 686 S.W.2d at 171. Neither party bears the burden on appeal to prove harm or harmlessness. *Reeves*, 420 S.W.3d at 816.

*Analysis*

In her motion for new trial, Sciacca argued that the jury charge properly provided an abstract paragraph pursuant to § 9.04 of the Penal Code, but that the trial court erred by not submitting an application paragraph to explain to the jury how to apply the law of § 9.04 to the facts of the case. *See Gray v. State*, 152 S.W.3d 125, 127–28 (Tex. Crim. App. 2004) (holding trial court's charge must apply the law to the facts adduced at trial because the jury must be instructed under what circumstances to convict or acquit). The trial court granted Sciacca's motion.

The State then brought this appeal, contending that the trial court erred in granting Sciacca's motion for new trial. The State's argument is twofold. First, it contends that there was no charge error in refusing to submit an application paragraph because the second sentence of section 9.04 was not applicable. Specifically, the State argues that whether Sciacca used deadly force by producing a weapon is irrelevant because Sciacca was charged with threatening to use deadly force, not actually using deadly force.

Secondly, the State argues that, even if it was error for the trial court to not submit an application paragraph for the charge as it related to section 9.04, such error did not harm Sciacca. Because we agree with the State's second argument, we address it.

For purposes of this opinion, we will assume without deciding, that section 9.04 was applicable in its entirety and that it was error to fail to provide an application paragraph. Thus, we turn to the issue of whether, under *Almanza*, there has been actual, rather than theoretical, harm to Sciacca as a result. *See Reeves*, 420 S.W.3d at 816. To do so, we examine the entire jury charge, the state of the evidence, counsels' arguments, and any other relevant information in the trial record. *Starks v. State*, 127 S.W.3d 127, 133 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd).

This Court conducted such an analysis in a very similar case, *Reynolds v. State*, 371 S.W.3d 511, 521–22 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). In *Reynolds*, a defendant charged with aggravated assault requested a jury instruction pursuant to section 9.04. *Id.* at 522. The defendant testified that he brought a gun with him to confront a group that he thought was threatening his friend, and that he hoped to "scare [the] group to leave[,]" and that it was "the only way [he] could get the group away from [his friend]." *Id.* This Court held that because this was some evidence to support a section 9.04 defensive issue, the trial court erred in refusing to submit the requested instruction. *Id.*

The Court then addressed the issue of whether the error was harmless under *Almanza*. *See id.* at 522–23. First, the Court examined the other portions of the jury charge and noted that the trial court had included instructions and application paragraphs on self-defense, defense of others, and apparent danger. *Id.* at 523. Because of these components of the charge, the Court concluded that "[e]ven though the trial court did not include a separate section 9.04 instruction in the charge, the language included in the charge did not leave the jury with 'no choice but to convict.'" *Id.* at 524. The Court noted that the jury was properly instructed that if it found that the use of force was justified under the facts of the case, either because the defendant acted in self-defense or defense of another, it should acquit the defendant. *Id.* The Court concluded that, "[b]y finding [the defendant] guilty of aggravated assault, the jury implicitly determined that the use of force was not justified under these factual circumstances[.]" *Id.* Because the use of force was not justified, the threat of force was likewise not justified. *See id.*

This Court also examined the arguments of counsel in *Reynolds*, and noted that the defense was permitted to argue the issue of self-defense during closing. *Id.* Specifically, the defense urged the jury to look at the situation from the defendant's perspective when considering why he brought a loaded weapon to the disturbance. *Id.* The State, in contrast, urged the jury to find that the defendant's display of the weapon was unreasonable because the person he was protecting did not feel

11

threatened, and the defendant loaded the gun and drew it before he ever even reached the scene. *Id.*

This Court noted that "[i]f the jury believed that [the defendant's] behavior was reasonable and justified under the law and the facts of this case, based on the language of the charge as given, it could have found [the defendant] not guilty." *Id.* By finding the defendant guilty, it rejected his argument that he was acting in self-defense or defense of another when he displayed his weapon. *Id.* This Court concluded that "[b]ased on the language of the entire jury charge, the state of the evidence, and the arguments of counsel, we therefore conclude that, under the facts of this case, the trial court's failure to include the requested section 9.04 instruction was harmless. *Id.* at 525.

We begin our analysis of the harm in this case by noting that Sciacca's jury *did* receive an abstract charge on section 9.04, it just did not receive an application paragraph. As such, Sciacca's harm, if any, was less than that of the defendant in *Reynolds*, who received no section 9.04 paragraphs in the charge at all, neither abstract nor application.

Second, we note that the jury in this case received self-defense/deadly force instructions, both abstract and application, that are almost identical to those given in *Reynolds*. And, the application paragraph that was given specifically told the jury that it should acquit Sciacca if it found that her exhibition of a deadly weapon was

12

justified because she was in reasonable fear of serious bodily injury at the hands of Leazer and she reasonably believed her actions were necessary to protect herself.[2] Like the jury in *Reynolds*, by finding appellant guilty, the jury here necessarily rejected Sciacca's contention that her display of the gun was justified under the facts of the case.

Regarding the state of the evidence, we note that in *Reynolds*, the defendant testified that he brought and displayed the gun in attempt to scare the crowd around his friend away. Here, Sciacca did not testify, and there is no evidence that she pulled her weapon in an effort to merely scare Leazer so he would not attack her.

---

[2]      The relevant portion of the application paragraph given to the jury provided:

> Therefore, if you find from the evidence beyond a reasonable doubt that the defendant, Susan Marie Sciacca, did threaten John Leazer with imminent bodily injury by using or exhibiting a deadly weapon, namely a firearm, as alleged, but you further find from the evidence, as viewed from the standpoint of the defendant at the time, that from the words or conduct, or both of John Leazer it reasonably appeared to the defendant that her life or person was in danger and there was created in her mind a reasonable expectation or fear of death or serious bodily injury from the use of unlawful deadly force at the hands of John Leazer, and that acting under such apprehension and reasonably believing that the use of deadly force on her part was immediately necessary to protect herself against John Leazer's use or attempted use of unlawful deadly force, she threatened John Leazer, the you should acquit the defendant on the grounds of self-defense[.]

Regarding arguments of counsel, we note that Sciacca's defense counsel showed the jury a slide of the section 9.04 charge, and then explained it to them as follows:

> This is—this is the defense. This is the basis upon which you should and will find her not guilty. A threat to cause death or serious bodily injury by the production of a weapon or otherwise so long as the actor's purpose is limited to creating an apprehension that she will use deadly force if necessary does not constitute deadly force.
>
> I suggested to you that that would be in the law in opening statement and sure enough, in the Court's charge—next slide—she tells you exactly that. What that means—next slide—is if Ms. Sciacca's purpose in pulling the gun was only to cause Leazer fear that she would use it if necessary is not the use of deadly force. If it's not the use of deadly force, she is not guilty. Next slide.
>
> > [Prosecutor]: Improper argument, Judge.
>
> It's not improper argument. That's the law.
>
> > [Trial Court]: *Overruled.*
>
> Go back. It's not the use of deadly force if her purpose was only to cause fear that she would use it if necessary. That's not improper argument. That's the law. If that's what you believe or if you even have a reasonable doubt about that she's not guilty.

While expressing no opinion as to the accuracy of defense counsel's argument and the trial court's ruling on the prosecutor's objection, we note this portion of the argument because it goes toward a finding of no harm. The 9.04 abstract paragraph was in the charge, and defense counsel was permitted to argue the substance of the very application paragraph that he sought to include in the charge.

14

This case is indistinguishable from *Reynolds* on the issue of harm.  Therefore, we conclude that, under the facts of this case, the trial court's failure to include an application paragraph for section 9.04 was harmless.  *See Reynolds*, 371 S.W.3d at 525 (finding no harm under similar facts and jury charge); *see also Starks*, 127 S.W.3d at 133 ("To determine if there is any harm, the degree of harm must be weighed in light of the entire jury charge, state of the evidence, counsels' arguments, and any other relevant information revealed by the trial record as a whole.").

## CONCLUSION

Because the error, if any, in refusing to submit an application paragraph for section 9.04 was harmless under *Almanza*, we reverse the trial court's order granting a new trial and remand for sentencing based on the jury's verdict.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Higley and Huddle.

Publish.  TEX. R. APP. P. 47.2(b).

15