**Opinion issued May 11, 2023**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-21-00438-CR**

———————————

**CYNTHIA D. WILLIS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 208th District Court**
**Harris County, Texas**
**Trial Court Case No. 1584804**

---

**MEMORANDUM OPINION**

A jury convicted appellant Cynthia D. Willis of the first-degree felony offense of murder and sentenced her to fifty years' imprisonment. *See* TEX. PENAL CODE §§ 19.02(b)(1), (2), (c), 12.32(a). Willis raises three issues on appeal. First, she

argues that her trial counsel provided ineffective assistance. Also in her first issue—which we construe as her second issue—Willis complains that the trial court erred by not sua sponte instructing the jury on the lesser-included offense of manslaughter. In her third issue, Willis argues that the trial court erred by admitting evidence of an extraneous offense. We affirm.

## Background

Willis was married to Eric "Mickey" Willis, and they had three children together. Mickey had other adult children from prior relationships, and Willis also had a child from a previous relationship. Willis, Mickey, and their three children lived in a rental house in Spring. Willis's child from a prior relationship would stay there from time to time as well.

The last time anyone saw Mickey alive was on March 9, 2018. He recently had begun having an extramarital affair with a woman he had known since middle school. On the evening of March 9, Mickey had dinner with his girlfriend, picked up his son from a friend's house just before midnight, and returned home and went to bed.

Early in the morning on March 10, Willis woke up her children, told them to pack a bag with some clothes, and drove them to Humble. She did not explain why they were leaving, and Mickey did not go with them. Willis and the children stayed in a hotel in Humble for a couple of nights before she took the children to her sister's

house in Humble on March 12. Willis stayed at her sister's house for a few nights, but the children stayed there for several weeks.

On March 19, one of Mickey's grown daughters contacted the police and requested a welfare check for Mickey. Neither Mickey's children nor his father, who worked with him, had heard from Mickey since March 9, and he had not shown up to work since then. Someone also contacted Mickey's landlord, who had keys to the Mickey's rental house. Before officers arrived at Mickey's house for the welfare check, Mickey's father met the landlord at the house. The landlord unlocked the front door and immediately smelled a noxious odor. Fearing the odor might be gas, the landlord shut the door and called the gas company. A representative of the gas company arrived but did not believe the smell was gas.

Shortly thereafter, Deputy Shawanna Mosley-Banks with the Harris County Sheriff's Office arrived at Mickey's house to conduct the welfare check. Upon entering the residence, she smelled the odor and recognized it as a decaying body. Mosley-Banks, Mickey's father, and the landlord entered the house. They first checked the three secondary bedrooms, finding no one occupying them. Upon reaching the closed door of the primary bedroom, they heard a loud noise coming from a television inside the bedroom. When Mosley-Banks opened the door, she saw a silhouette of a body lying on the bed covered by a blanket. She approached the bed, pulled back the covers, and discovered Mickey's body in a state of decay. She

ushered Mickey's father and landlord out of the house and called for additional officers. The officers determined that there was no sign of forced entry into the house. The investigation and a later autopsy revealed that Mickey died from a single gunshot wound to the head. Police never located the firearm.

A Harris County grand jury indicted Willis for murder. *See* TEX. PENAL CODE § 19.02(b)(1), (2). She was arrested in Houston on March 24.

Trial occurred over seven days. Mickey's children and coworkers testified that Mickey owned a construction company and had a reputation for a good work ethic. He was also an attentive father both to his children and to Willis's child. Mickey's absence from work and his failure to call his coworkers and children after March 9 were unusual, eventually prompting the request for the welfare check.

Family and coworkers also testified about problems in Mickey and Willis's marriage. One of Mickey's coworkers testified that he saw Willis stab Mickey with a knife in 2000 or 2001 outside the couple's home after the coworker dropped Mickey off after work. The coworker called the police, but police were unable to find Mickey or Willis at the house by the time they arrived. Consequently, no charges were filed against Willis.

Coworkers also testified that they knew Mickey recently began dating another woman, and text messages Willis sent to Mickey before his death showed that she was aware of the affair. Mickey had contacted a lawyer about divorcing Willis. He

4

had paid the lawyer a partial retainer and obtained some documents to start the divorce proceeding, but he had not filed for divorce before his death.

The trial evidence included cell phone records showing that Willis's and Mickey's cell phones travelled together on the morning of March 10, 2018, from the house to the hotel in Humble, indicating that Willis took Mickey's cell phone with her. Although Willis had called or texted Mickey numerous times before that morning, the records showed that she never contacted him again afterwards. She also texted a friend on the morning of March 9 discussing problems she was having with Mickey and telling her friend, "Putting my plan into motion."

Willis called in sick to work for several days beginning on March 9, and she never went to work again after March 9. Willis's sister, however, testified that while Willis and the children stayed at her house for a few days after March 12, Willis did not appear to be sick. Text messages Willis sent to her children around this time also conflicted with her excuse for missing work due to illness. At some point, Willis left her children at her sister's house.

After the State rested during the guilt-innocence phase of trial, defense counsel made a motion for directed verdict, which the trial court denied. After the defense rested, both sides gave closing arguments. The jury returned a verdict of guilty.

During the punishment phase of trial, Willis testified about Mickey's character. She expressly refused to accept the jury's guilty verdict, denying her involvement in the murder. She testified that Mickey had "always cheated" on her, but she nevertheless stayed with him "to keep the family together." She testified that Mickey had been a drug dealer, had been in and out of prison, and owed money to people at various times, including in 2018, for which he had received threats. She also testified that Mickey had pulled a gun on her in 2003, but the charges were later dropped. She denied having ever stabbed Mickey.

After both sides rested and presented closing arguments, the jury sentenced Willis to fifty years' imprisonment. Willis filed a motion for new trial arguing that her trial counsel was ineffective. The trial court did not hold a hearing on the motion for new trial, and it was overruled by operation of law. TEX. R. APP. P. 21.8(c). This appeal followed.

## Ineffective Assistance of Counsel

In her first issue, Willis argues that her trial counsel was ineffective for failing to investigate, prepare for trial, properly object, raise "crucial issues" such as sudden passion during trial, request a jury instruction on the lesser-included offense of manslaughter, and present mitigating evidence at the punishment phase of trial. She argues that these failures establish her ineffective assistance of counsel claim.

6

## A. Standard of Review and Governing Law

The Sixth Amendment of the United States Constitution guarantees that in "all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. The "right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). To establish that counsel's assistance was ineffective, the defendant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Id.* at 687; *see Johnson v. State*, 624 S.W.3d 579, 587 (Tex. Crim. App. 2021) (stating that prejudice prong requires showing reasonable probability that but for counsel's unprofessional errors, result of proceeding would have been different). The defendant bears the burden to prove both prongs by a preponderance of the evidence, and the "failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *Richardson v. State*, 606 S.W.3d 375, 381 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd).

Under the first prong, counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687–88; *Johnson*, 624 S.W.3d at 585. "[J]udicial review of whether counsel's performance was deficient

must be highly deferential to trial counsel and avoid the deleterious effects of hindsight." *Richardson*, 606 S.W.3d at 381.

At the outset, there is a "strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance" and that the conduct constituted sound trial strategy. *Johnson*, 624 S.W.3d at 586 (quoting *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)). To defeat this presumption, counsel's ineffectiveness must be affirmatively demonstrated in the appellate record. *Id.* "It is not sufficient that the appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence. Rather, the record must affirmatively demonstrate trial counsel's alleged ineffectiveness." *Id.* at 585 (quoting *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007)). The defendant must demonstrate that no plausible reason exists for the challenged act or omission. *Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002); *Richardson*, 606 S.W.3d at 382.

Generally, trial counsel should be provided an opportunity to explain challenged conduct on the record before a court finds that counsel was ineffective. *Johnson*, 624 S.W.3d at 586; *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003); *see Lopez v. State*, 343 S.W.3d 137, 144 (Tex. Crim. App. 2011) (stating that otherwise silent record may be "supplemented through a hearing on a motion for new trial" to produce additional information about counsel's trial strategy). "In

8

the majority of cases, the appellant is unable to meet the first prong of the *Strickland* test because the record is underdeveloped and does not adequately reflect the alleged failings of trial counsel." *Richardson*, 606 S.W.3d at 382. A silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *Johnson*, 624 S.W.3d at 586; *see Rylander*, 101 S.W.3d at 110–11. When the record is undeveloped, counsel will be found ineffective only if the conduct was "so outrageous that no competent attorney would have engaged in it." *Johnson*, 624 S.W.3d at 586 (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).

## B. Analysis

Willis challenges numerous aspects of her counsel's representation at trial. She argues that trial counsel did not conduct a pretrial investigation, prepare for trial, raise proper objections and "crucial issues" such as sudden passion during trial, request inclusion in the jury charge of an instruction on the lesser-included offense of manslaughter, or investigate and adduce mitigating evidence during the punishment phase.

However, the appellate record does not support these arguments. *See id.* at 585–86. Willis does not argue and the record does not show that her trial counsel was provided an opportunity to answer these allegations. *See id.* at 586; *Rylander*, 101 S.W.3d at 111. Although Willis filed a motion for new trial and raised

ineffective assistance of her trial counsel, she did not request a hearing on the motion to present testimony from her trial counsel explaining his actions. *See Lopez*, 343 S.W.3d at 144; TEX. R. APP. P. 21.2 ("A motion for new trial is a prerequisite to presenting a point of error on appeal only when necessary to adduce facts not in the record."). Nor does the record otherwise contain any explanation from counsel for the challenged conduct. Furthermore, Willis does not argue and the record does not show that the challenged actions were "so outrageous that no competent attorney would have engaged in" the actions. *See Johnson*, 624 S.W.3d at 586 (quoting *Goodspeed*, 187 S.W.3d at 392).

### 1. Pretrial Investigation

Willis asserts generally that her trial counsel did not conduct an adequate pretrial investigation based in part on his failure to call more witnesses at trial. To assert an issue on appeal, an appellant's brief must contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). An appellant waives an issue on appeal if she does not adequately brief the issue by providing supporting argument and appropriate citations to authorities and to the record. *Id.*; *Lucio v. State*, 351 S.W.3d 878, 896–97 (Tex. Crim. App. 2011); *Chaves v. State*, 630 S.W.3d 541, 555 (Tex. App.—Houston [1st Dist.] 2021, no pet.). In arguing that counsel failed to conduct a pretrial investigation, Willis does not cite to any part of the appellate record or

10

provide substantive analysis showing that counsel was ineffective. *See* TEX. R. APP. P. 38.1(i); *Lucio*, 351 S.W.3d at 896–97; *Chaves*, 630 S.W.3d at 555. Thus, she has waived appellate review of this sub-issue.

But even if she had not waived this sub-issue, we would conclude that the record does not affirmatively demonstrate counsel's alleged ineffectiveness. *See Johnson*, 624 S.W.3d at 585–86. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Ex parte Bowman*, 533 S.W.3d 337, 350 (Tex. Crim. App. 2017) (quoting *Strickland*, 466 U.S. at 691). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgment." *Id.* (quoting *Wiggins v. Smith*, 539 U.S. 510, 521–22 (2003)). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Id.* (quoting *Strickland*, 466 U.S. at 690).

The record is silent concerning whether defense counsel conducted a pretrial investigation. As stated above, counsel was not provided an opportunity to explain his pretrial investigation or lack thereof. *See Johnson*, 624 S.W.3d at 586; *Rylander*, 101 S.W.3d at 111. Because the record is silent concerning counsel's pretrial investigation, including his reasons for not contacting or calling specific witnesses at trial, we cannot conclude that counsel was deficient on this basis. *See Johnson*,

11

624 S.W.3d at 586; *Ex parte Flores*, 387 S.W.3d 626, 633 (Tex. Crim. App. 2012) (stating that defendant must overcome presumption that counsel's decision not to call witness is sound trial strategy).

### 2. Trial Preparation

Willis also argues that defense counsel did not adequately prepare for trial. She argues that counsel filed a motion to continue trial one day before trial began, did not make an opening statement, and did not cross-examine several witnesses against her. She also argues that counsel could not hear the proceedings or was not attentive, and the court and the witnesses could not hear counsel. Willis's appellate brief does not provide any substantive analysis showing that these purported failures constitute a deficient performance. Willis has therefore waived appellate review of this sub-issue. *See* TEX. R. APP. P. 38.1(i); *Lucio*, 351 S.W.3d at 896–97; *Chaves*, 630 S.W.3d at 555.

But even if she had not waived this sub-issue, the record does not affirmatively demonstrate that counsel was unprepared for trial. First, contrary to Willis's assertion, counsel filed a motion for continuance three days before voir dire and ten days before the guilt-innocence phase of trial began. Counsel argued in the motion and at a hearing on the motion prior to voir dire that a continuance was appropriate because voir dire was to be conducted at NRG stadium due to the COVID-19 pandemic. Conducting voir dire in that manner would prevent adequate observation

of the venire members' non-verbal communication, such as facial expressions and body language, and it would be difficult to see and hear each individual venire person. On their face, counsel's arguments supporting the motion appear to be a reasonable strategic decision to seek a better venue for the voir dire proceeding.

Second, counsel's decision to waive an opening statement is an "inherently tactical" decision. *Brennan v. State*, 334 S.W.3d 64, 77 (Tex. App.—Dallas 2009, no pet.) (quoting *Taylor v. State*, 947 S.W.2d 698, 704 (Tex. App.—Fort Worth 1997, pet. ref'd)); *see Darkins v. State*, 430 S.W.3d 559, 570 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) ("Whether to deliver an opening statement is entirely optional. 'Few matters during a criminal trial could be more imbued with strategic implications than the exercise of this option.'") (citation omitted). Counsel gave closing arguments at the end of both phases of trial. The record is silent concerning counsel's reason for not giving an opening statement.

Third, Willis cites to only one instance in which she asked her counsel to speak up during his closing argument at the guilt-innocence phase. Our review of the record indicates that there were other instances over the course of the seven-day trial in which counsel could not hear or be heard. However, the reasons counsel could not hear or be heard are not clear on the face of the appellate record. Willis does not point to any part of the record indicating that the failures to hear or to be heard caused any issue. We cannot conclude that this constituted an unsound trial strategy.

13

Fourth, Willis challenges defense counsel's decision not to cross-examine several witnesses. Willis does not provide substantive analysis of this issue or record citations supporting her argument. *See* TEX. R. APP. P. 38.1(i); *Lucio*, 351 S.W.3d at 896–97; *Chaves*, 630 S.W.3d at 555. She has therefore waived appellate review of this sub-issue.

In any event, "[c]ross-examination is inherently risky, and a decision not to cross-examine a witness is often the result of wisdom acquired by experience in the combat of trial." *Jones v. State*, 500 S.W.3d 106, 115 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (quoting *Ex parte McFarland*, 163 S.W.3d 743, 756 (Tex. Crim. App. 2005)). An ineffective cross-examination can bolster a witness's credibility and "underscore the very points that are sought to be impeached." *Id.* (quoting *Dannhaus v. State*, 928 S.W.2d 81, 88 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd)). Thus, unless a good reason exists to cross-examine a witness, "it can be more effective to refrain from cross-examining a damaging witness to minimize the impact of his testimony." *Id.* (quoting *Dannhaus*, 928 S.W.2d at 88). Counsel's decision not to cross-examine certain witnesses can constitute a sound trial strategy, and the record does not affirmatively demonstrate that this strategy was unsound.

### 3. Lodging Objections and Raising "Crucial Issues" at Trial

Willis next argues that her counsel lodged only one objection at trial, which was to the admission of a photograph of Mickey's deceased body, and counsel for

14

the State had to assist defense counsel in making this objection. Our review of the record, however, reveals that counsel raised numerous objections during voir dire and the seven-day trial in this case. Thus, we disagree with Willis's assertion that her counsel lodged only one objection and therefore counsel's performance was deficient.

### a. *Extraneous Offense Evidence*

Willis also argues that her counsel should have objected to "highly prejudicial testimony" about a remote, uncharged extraneous offense under Rule of Evidence 403. *See* TEX. R. EVID. 403 (providing that court may exclude relevant evidence if its probative value is substantially outweighed by danger of unfair prejudice). During the guilt-innocence phase of trial, Joseph Ballard testified that he observed Willis stab Mickey with a knife in 2000 or 2001. Willis's counsel did not object to this testimony.

Assuming without deciding that this evidence should have been excluded under Rule 403 and counsel was deficient in not objecting to it, Willis has not established prejudice, or a reasonable probability that excluding the evidence would have resulted in a different outcome. *See Strickland*, 466 U.S. at 694; *Johnson*, 624 S.W.3d at 587. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694; *Johnson*, 624 S.W.3d at 587. If the deficient performance might have affected a guilty verdict, the question is

whether there is a reasonable probability that without the errors the factfinder would have had a reasonable doubt regarding guilt. *Johnson*, 624 S.W.3d at 587. Appellate courts examine the totality of the representation and the evidence in evaluating counsel's effectiveness. *Id.*

The evidence at trial showed that Mickey had been having an affair for a few months prior to his death and that he intended to divorce Willis. Willis's text messages revealed that she knew about the affair, and she texted a friend the day before Mickey's death that she was "[p]utting [her] plan into motion" when discussing her marital problems. Very soon after Mickey died, Willis left the house in Spring with her children, took Mickey's cell phone, and went to Humble. Neither she nor the children ever returned to the Spring house. Willis did not call or text Mickey at all after his death, even though she had called and texted him numerous times in the days before his death. Willis also called in sick to work for several days around the time of Mickey's death, but the evidence showed that she was not actually ill. Furthermore, when law enforcement discovered Mickey's body, there were no signs of forced entry into the house.

Considering this evidence, we cannot conclude that a reasonable probability exists that the jury would have had a reasonable doubt regarding Willis's guilt if the evidence of the extraneous offense had been excluded at trial. *See id.* Therefore, Willis has not established the second prong of an ineffective assistance claim on this

sub-issue. *See Strickland*, 466 U.S. at 687, 694; *see also Williams*, 301 S.W.3d at 687 (stating that failure to satisfy one *Strickland* prong negates need to consider other prong).

### b. Sudden Passion Instruction

Willis also argues that her counsel failed to raise sudden passion at the punishment phase of trial. Willis does not point to any trial evidence supporting sudden passion or provide substantive analysis showing that the evidence entitled her to a jury instruction on sudden passion. *See* TEX. R. APP. P. 38.1(i); *Lucio*, 351 S.W.3d at 896–97; *Chaves*, 630 S.W.3d at 555. Willis has therefore waived appellate review of this sub-issue.

Nevertheless, the record before us does not affirmatively demonstrate that counsel was ineffective for failing to raise sudden passion. Our review of the record does not reveal any evidence tending to show that Willis "caused [Mickey's] death under the immediate influence of sudden passion arising from an adequate cause." *See* TEX. PENAL CODE § 19.02(d) (defining sudden passion). She did not admit to shooting Mickey, but rather she denied doing so when she testified during the punishment phase of trial. It is possible that evidence of sudden passion existed and that counsel was deficient in not investigating or presenting such evidence at trial. *See id.* (stating that defendant has burden to prove sudden passion by preponderance of evidence and, if proved, offense is reduced to second-degree felony). But on the

17

silent record before us, we cannot conclude that counsel was deficient in not raising sudden passion in this case.

### 4. Instruction on Lesser-Included Offense of Manslaughter

Willis also argues generally that counsel was ineffective for failing to object to the omission of a jury instruction on the lesser-included offense of manslaughter.[1] However, her argument focuses only on the prejudice prong of an ineffective assistance claim. *See Strickland*, 466 U.S. at 687. Willis offers no argument or analysis showing that she was entitled to the instruction or that counsel's performance was deficient. *See* TEX. R. APP. P. 38.1(i); *Lucio*, 351 S.W.3d at 896–97; *Ex parte Nailor*, 149 S.W.3d 125, 133–34 (Tex. Crim. App. 2004) (stating that counsel does not perform deficiently by not requesting jury instruction to which defendant is not entitled); *Shanklin v. State*, 190 S.W.3d 154, 159 (Tex. App.—Houston [1st Dist.] 2005, pet. dism'd) (stating that defendant must establish entitlement to jury instruction on lesser-included offense to establish counsel's deficient performance in failing to request instruction). Moreover, the record is silent concerning counsel's reasons for not requesting a manslaughter instruction. *See*

---

[1] A person commits manslaughter if she recklessly causes the death of an individual. TEX. PENAL CODE § 19.04(a). Neither party disputes that manslaughter is a lesser-included offense of murder. *See Gilbert v. State*, 196 S.W.3d 163, 165 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).

18

*Johnson*, 624 S.W.3d at 585–86. Therefore, we cannot conclude on the record before us that counsel was ineffective for failing to request a manslaughter instruction.

### 5. Mitigating Evidence

Willis also generally argues that her counsel was ineffective for failing to investigate potential mitigating evidence or present any mitigating evidence during the punishment phase of trial.

Defense counsel's "failure to uncover and present voluminous mitigating evidence at sentencing is not a reasonable tactical decision where counsel has not 'fulfilled their obligation to conduct a thorough investigation of the defendant's background.'" *Ex parte Garza*, 620 S.W.3d 801, 824 (Tex. Crim. App. 2021) (quoting *Wiggins*, 539 U.S. at 522). "[C]ounsel can only make a reasonable decision to forgo presentation of mitigating evidence after evaluating available testimony and determining it would not be helpful." *Lair v. State*, 265 S.W.3d 580, 595 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). In assessing the reasonableness of an attorney's investigation, a court "must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Ex parte Garza*, 620 S.W.3d at 824 (quoting *Wiggins*, 539 U.S. at 527). "When trial counsel does not conduct a complete investigation, his conduct is 'reasonable only to the extent that reasonable

professional judgments support the limitations on investigation.'" *Id.* (quoting *Wiggins*, 539 U.S. at 533).

Willis relies only upon her motion for new trial to support her argument. However, a motion for new trial is not self-proving and does not constitute evidence. *Lamb v. State*, 680 S.W.2d 11, 13 (Tex. Crim. App. 1984); *Burrus v. State*, 266 S.W.3d 107, 112 (Tex. App.—Fort Worth 2008, no pet.). Willis attached four affidavits to the motion for new trial, but these affidavits do not constitute evidence until they are offered and admitted into evidence at a hearing on the motion for new trial. *Lamb*, 680 S.W.2d at 13; *Burrus*, 266 S.W.3d at 112. Willis did not request a hearing on her motion for new trial, and the motion was denied by operation of law without a hearing. Thus, neither the motion nor its supporting affidavits are competent evidence.

Because the record in this direct appeal does not affirmatively demonstrate that defense counsel performed deficiently, Willis has not met her burden to defeat the strong presumption that counsel's trial conduct fell within the wide range of reasonable professional assistance.[2] *See Johnson*, 624 S.W.3d at 585–86; *see also Williams*, 301 S.W.3d at 687 (stating that failure to satisfy one *Strickland* prong

---

[2]   Claims of ineffective assistance of counsel rejected on direct appeal may be resubmitted in an application for a writ of habeas corpus. *Johnson v. State*, 624 S.W.3d 579, 588 n.1 (Tex. Crim. App. 2021); *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011).

negates court's need to consider other prong). We overrule Willis's first issue to the extent she argues that her trial counsel provided ineffective assistance of counsel.

**Instruction on Lesser-Included Offense of Manslaughter**

Within her first issue, Willis raises a separate issue which we construe as her second issue: whether the trial court erred by failing to sua sponte include a jury instruction on the lesser-included offense of manslaughter. The State contends that Willis did not preserve error on this issue by objecting to the omission of a manslaughter instruction in the trial court.[3]

In each felony criminal case, the trial court must submit to the jury "a written charge distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. art. 36.14; *see Williams v. State*, 662 S.W.3d 452, 460 (Tex. Crim. App. 2021). A jury charge should include "all of the law applicable to the criminal offense

---

[3] The State also argues that Cynthia's sub-issue concerning omission of a jury instruction on the lesser-included offense of manslaughter is impermissibly multifarious because it argues both that counsel was ineffective for not requesting the instruction and that the trial court erred by not sua sponte including such an instruction. A point of error is multifarious when it is based on more than one legal theory. *Davis v. State*, 329 S.W.3d 798, 820 (Tex. Crim. App. 2010). By combining more than one contention in a single point of error, an appellant risks rejection of the entire point of error on the ground that nothing will be presented for review. *Foster v. State*, 101 S.W.3d 490, 499 (Tex. App.—Houston [1st Dist.] 2002, no pet.). However, an appellate court may address a multifarious point that is sufficiently developed in the brief. *Id.*; *see Davis*, 329 S.W.3d at 820 (deciding to review multifarious point of error "in the interest of justice"). Although we agree with the State that the sub-issue is multifarious, Cynthia sufficiently developed both points such that the Court can identify the points she has made. In the interest of justice, we will consider Cynthia's multifarious point.

that is set out in the indictment or information" as well as other general admonishments. *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018) (quoting *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007)). "These matters are always 'law applicable to the case[,]'" and a trial court must instruct the jury on these issues sua sponte without prompting from counsel because "the trial judge is ultimately responsible for the accuracy of the jury charge and accompanying instructions." *Id.* (quoting *Delgado*, 235 S.W.3d at 249).

Generally, a defendant may raise a claim of jury-charge error on appeal regardless of whether the defendant preserved the alleged error in the trial court. *See Williams*, 662 S.W.3d at 460–61; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g); *State v. Sciacca*, 518 S.W.3d 460, 464 (Tex. App.—Houston [1st Dist.] 2016, no pet.). If the defendant properly objected, the reviewing court determines whether the error caused some harm. *Williams*, 662 S.W.3d at 460. If the defendant did not object, the reviewing court determines whether the error caused egregious harm. *Id.* at 460–61.

When, however, the defendant complains about the omission of a defensive instruction in the jury charge, this framework with its two standards of review does not apply. *Id.* at 461. Rather, "unrequested defensive instructions are still subject to ordinary rules of procedural default." *Id.*; *see Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998) (holding that defensive issue is not law applicable to case

22

unless defendant timely requests inclusion or objects to omission in jury charge). Rule of Appellate Procedure 33.1 provides that, as a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made by a timely request, objection, or motion stating the grounds of the complaint with sufficient specificity to make the trial court aware of the complaint and the trial court ruled or refused to rule on the complaint. TEX. R. APP. P. 33.1(a). Requiring a timely, specific objection serves two purposes: (1) it notifies the trial court of the objection and affords an opportunity for a ruling; and (2) it affords opposing counsel an opportunity to respond to the complaint. *Williams*, 662 S.W.3d at 460. A defendant must preserve error in a defensive instruction before he may seek appellate review of the error. *Id.* at 461.

The Court of Criminal Appeals has held that rules governing preservation of error apply to the omission of an unrequested lesser-included offense instruction from a jury charge. *Id.*; *Mendez*, 545 S.W.3d at 552; *Tolbert v. State*, 306 S.W.3d 776, 781 (Tex. Crim. App. 2010); *Posey*, 966 S.W.2d at 61–62. Like other defensive instructions, lesser-included offense instructions "frequently depend upon trial strategy and tactics," and therefore lesser-included offenses are not considered "the law applicable to the case." *Williams*, 662 S.W.3d at 461 (quoting *Tolbert*, 306 S.W.3d at 780–81); *see Mendez*, 545 S.W.3d at 552. Consequently, a criminal defendant must request a lesser-included offense instruction and object to the

23

omission of such an instruction in writing presented to the trial court before the charge is read to the jury. TEX. CODE CRIM. PROC. art. 36.14; *Williams*, 662 S.W.3d at 461; *Posey*, 966 S.W.2d at 61–62. Absent a request, a trial court is not required to instruct the jury on lesser-included offenses. *Williams*, 662 S.W.3d at 461; *Tolbert*, 306 S.W.3d at 780–81; *Posey*, 966 S.W.2d at 62. And absent an objection to the omission of a lesser-included offense instruction, the defendant has not preserved error and may not present the complaint for review on appeal. *Williams*, 662 S.W.3d at 461.

On appeal, Willis acknowledges that she did not object to the omission of a jury instruction on the lesser-included offense of manslaughter. *See* TEX. R. APP. P. 33.1(a). She nevertheless relies on the dual standard of review generally applicable to jury charge error, under which reviewing courts will reverse unpreserved jury charge error upon a showing of egregious harm. *See Williams*, 662 S.W.3d at 460–61; *Almanza*, 686 S.W.2d at 171. However, this dual standard does not apply when, as here, the complaint concerns the allegedly erroneous omission of a defensive instruction, such as an instruction on a lesser-included offense. *See Williams*, 662 S.W.3d at 461. Because Willis did not object to the omission of a jury instruction concerning the lesser-included offense of manslaughter, we conclude that she did not preserve this complaint for appellate review. *See id.*; *Tolbert*, 306 S.W.3d at 781 (holding that, in capital murder case, "trial court had no duty to *sua sponte*

24

instruct the jury on the lesser-included offense of murder and that a jury instruction on this lesser-included offense was not 'applicable to the case' absent a request by the defense for its inclusion in the jury charge"). We overrule Willis's second issue.

**Admissibility of Extraneous Offense Evidence**

In her third issue, Willis argues that the trial court erred by admitting evidence that she had stabbed Mickey twenty years earlier because it was too remote in time to be admissible and it caused undue prejudice. The State contends that Willis failed to preserve this issue for appellate review. We agree with the State.

As stated above, to preserve error for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion with sufficient specificity to apprise the trial court of the complaint. TEX. R. APP. P. 33.1(a)(1)(A). If a defendant does not timely object to the admission of evidence, she does not preserve error in the admission of that evidence for appellate review. *Saldano v. State*, 70 S.W.3d 873, 889–90 (Tex. Crim. App. 2002); *Zill v. State*, 355 S.W.3d 778, 789 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Thompson v. State*, 4 S.W.3d 884, 886–87 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (stating that defendant must object to preserve error in admission of extraneous offense evidence).

At trial, the State called Mickey's longtime friend to testify. Anticipating the witness's testimony, the State asked to approach the bench and, outside the presence

of the jury, informed the court that the State intended to elicit testimony about a stabbing incident that had been disclosed to defense counsel. Defense counsel did not object to the testimony. The friend then testified that he witnessed Willis stab Mickey with a knife outside the couple's home in 2000 or 2001.

Willis did not object to this testimony. Accordingly, we hold that she did not preserve error on the admissibility of this extraneous offense evidence. *See* TEX. R. APP. P. 33.1(a); *Saldano*, 70 S.W.3d at 889–90; *Zill*, 355 S.W.3d at 789; *Thompson*, 4 S.W.3d at 886–87. We overrule Willis's third issue.

## Conclusion

We affirm the judgment of conviction by the jury.


April L. Farris
Justice

Panel consists of Justices Hightower, Rivas-Molloy, and Farris.

Do not publish. TEX. R. APP. P. 47.2(b).